IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-0774

_____

**FILED**

**October 29, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WAYNE A. LEMASTERS and MARY JOAN LEMASTERS,
Plaintiffs Below, Petitioners

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel Jr., Judge
Civil Action No. 06-C-137H

AFFIRMED

_____

Submitted: September 11, 2013
Filed: October 29, 2013

Christopher J. Regan, Esq.                Ronda L. Harvey, Esq.
James G. Bordas, III, Esq.                Bowles Rice LLP
Scott S. Blass, Esq.                      Charleston, West Virginia
Michelle L. Marinacci, Esq.
Bordas and Bordas, PLLC                   Ashley P. Hardesty, Esq.
Wheeling, West Virginia                   Bowles Rice LLP
Counsel for the Petitioners               Morgantown, West Virginia
                                          Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.
JUSTICES DAVIS and WORKMAN dissent and reserve the right to file dissenting opinions.

SYLLABUS BY THE COURT

1.     "When a policyholder of uninsured or underinsured motorist coverage issued pursuant to W. Va. Code, 33-6-31(b) substantially prevails in a suit involving such coverage under W. Va. Code, 33-6-31(d), the insurer issuing such policy is liable for the amount recovered up to the policy limits, the policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience."   Syl. pt. 6, *Marshall v. Saseen*, 192 W. Va. 94, 450 S.E.2d 791 (1994).

2.     "Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience."   Syl. pt. 1, *Hayseeds v. State Farm Fire & Cas.*, 177 W. Va. 323, 352 S.E.2d 73 (1986).

3.     "An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W. Va. Code, 33-11-4(9); but such implied private cause of action cannot be maintained until the underlying suit is resolved."   Syl. pt. 2, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W. Va. 597, 280 S.E.2d 252 (1981).

i

4. "More than a single isolated violation of W. Va. Code, 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action." Syl. pt. 3, *Jenkins v. J.P. Penney Cas. Ins. Co.*, 167 W. Va. 597, 280 S.E.2d 252 (1981).

5. "The conditions and predicate for bringing a case under *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981), are wholly different from those necessary for bringing an underlying contract action or for bringing an action under *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986). Whereas under *Hayseeds* it is necessary that a policyholder substantially prevail on an underlying contract action before he may recover enhanced damages, under *Jenkins* there is no requirement that one substantially prevail; it is required that liability and damages be settled previously or in the course of the Jenkins litigation. Jenkins instead predicates entitlement to relief solely upon violation of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4(9), where such violation arises from a "general business practice" on the part of the insurer." Syl. pt. 9, *McCormick v. Allstate Ins. Co.*, 197 W. Va 415, 475 S.E.2d 507 (1996).

6. "An insured 'substantially prevails' in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the

ii

commencement of the action, as well as when the action is concluded by a jury verdict for such an amount. In either of these situations the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds." Syl. pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.*, 183 W. Va. 9, 393 S.E.2d 647 (1990).

7.     "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. pt. 3, *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986).

Per curiam:

The petitioners, Wayne A. Lemasters and Mary Joan Lemasters, appeal the May 16, 2012, order of the Circuit Court of Marshall County that denied attorney fees, costs and expenses incurred in the prosecution of bad faith allegations against the respondent, Nationwide Mutual Insurance Company ("Nationwide"). In this order, the court awarded attorney fees, costs and expenses pursuant to our holding in *Hayseeds v. State Farm Fire & Casualty*, 177 W. Va. 323, 352 S.E.2d 73 (1986), in the amount of $30,108.71 for substantially prevailing in the underlying first-party underinsured motorists claim. The Lemasterses assert that the circuit court had the authority to award additional attorney fees, costs and expenses, for their prosecution of a companion bad faith case and requested entry of an order granting attorney fees, expenses and costs in excess of $900,000. After a careful review of the record, the briefs submitted by the parties and the arguments of counsel, we affirm the order of the circuit court for the reasons stated herein.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Wayne A. Lemasters was injured in an automobile accident on June 15, 2004. He was not at fault for the accident. As a result of this accident Mr. Lemasters settled his personal injury claims with the at-fault driver for that driver's

1

insurance policy liability limits of $50,000.[1]   Mr. Lemasters also made a claim with his own insurance carrier, the respondent, Nationwide, for underinsured motorists (UIM) coverage.  The coverage limit for the UIM benefits was $50,000.

A factual dispute arose between the Mr. Lemasters and Nationwide over the extent of Mr. Lemasters' injuries and losses, especially the extent of his lost wages.[2]  As a result, final settlement on the claim was delayed.  In 2006, the Lemasterses filed a civil action against Nationwide to recover the UIM benefits.  In October of 2007 the Lemasters and Nationwide settled the claim seeking UIM coverage with the payment of full policy limits of $50,000.

The Lemasterses did not move for attorney fees and costs under *Hayseeds* at this time.  Instead, the Lemasterses filed a motion to amend their complaint against Nationwide to allege a bad faith claim for violation of the Unfair Trade Practices Act ("UTPA"), W. Va. Code § 33-11-3 (1974).  Mr. and Mrs. Lemasters alleged that Nationwide acted in bad faith by not paying their first-party claim for UIM.  Nationwide countered that it had not acted in bad faith by delaying payment and that the delay was

---

[1] The at-fault driver was also insured by Nationwide.

[2] Nationwide argued that it was not provided sufficient information with which to evaluate Mr. Lemasters' claims.  In terms of the wage loss claim, the petitioner argued that the lost wages were straightforward: Mr. Lemasters was paid a set sum per hour for his work and earned an average of $70,000 per year, including overtime.

2

the result of Nationwide's need to fully investigate the claim. The bad faith case went to trial. After seven days of trial, the jury returned a verdict in favor of Mr. and Mrs. Lemasters, awarding $400,000.00 in compensatory damages and $200,000.00 in punitive damages against Nationwide.

The jury verdict form contained several questions for the jury to answer, including whether Nationwide violated the Unfair Claims Settlement Practices Act[3] as part of a general business practice. The jury was also asked whether Nationwide violated the duty of good faith and fair dealing in adjusting the Lemasterses' UIM claim. Finally the jury was asked whether Nationwide actually knew that the Lemasterses' underinsured motorist claim was proper, and whether Nationwide willfully, maliciously and intentionally utilized an unfair business practice in settling, or failing to settle, the petitioners' claim. To each of these questions the jury answered, "Yes."

The Lemasterses moved for attorney fees and costs pursuant to *Hayseeds* on their initial UIM action. The circuit court made a finding that the Lemasterses had substantially prevailed in their underlying UIM action against Nationwide. The circuit court held that "after due consideration the Plaintiffs substantially prevailed in their suit to obtain the underinsured motorists coverage provided in their policy of insurance with Nationwide Mutual Insurance Company and are therefore entitled to an award of

---

[3] W. Va. Code § 33-11-4(9) (2002).

3

reasonable fees, costs, and litigation expenses pursuant to syllabus point 6 of *Marshall v. Saseen* (citation omitted) and awarded $30,108.71."[4]

The Lemasterses also moved for attorney fees and costs on the bad faith award, based upon UTPA violations.  Mr. and Mrs. Lemasters argued that pursuant to *Hayseeds*, they were entitled to additional attorney fees, costs and expenses. They contended that they were entitled to an additional $953,087.44 in attorney fees and costs for litigating the bad faith claim.  In addition, they asserted several other theories under which they were entitled to these fees on the bad faith verdict, despite the fact that they had entered into a contingency fee arrangement[5] with the counsel under which fees would be paid from the underlying verdict.  They further argued that they were entitled to fees, costs and expenses from Nationwide for vindicating the bad faith claim, as well as

---

[4] Syl. pt. 6 of *Marshall v. Saseen*, 192 W. Va. 94, 450 S.E.2d 791 (1994), states:

> When a policyholder of uninsured or underinsured motorist coverage issued pursuant to W. Va. Code, 33-6-31(b) substantially prevails in a suit involving such coverage under W. Va. Code, 33-6-31(d), the insurer issuing such policy is liable for the amount recovered up to the policy limits, the policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience.

[5] Mr. and Mrs. Lemasters entered into a contingency fee agreement with their attorneys, whereby the attorney fees would be paid contingent upon what was recovered by way of settlement, judgment or otherwise, calculated as follows:  One-third of all sums recovered by settlement before suit is filed, 40 percent of all sums recovered if the case is settled after suit is filed and 50 percent of all sums recovered after an appeal is perfected.

4

enhanced attorney fees, costs and expenses because of Nationwide's use of an unfair business practice. Finally, they argued that the conduct of Nationwide was vexatious and outrageous and warranted an award of attorney fees.

In an order entered May 16, 2013, the circuit court granted Mr. and Mrs. Lemasters attorney fees pursuant to *Hayseeds* for substantially prevailing on the UIM claim in the amount of $25,818.75, as well as expenses in the amount of $639.56, for the fees and costs incurred in pursuing the first-party UIM claim. The court also awarded pre-judgment interest on this sum in the amount of $3,650.40, for a total award of $30,108.71. The court order stated that the basis of the Lemasterses' request for additional attorney fees on the bad faith action was *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996). The court specifically found that the *McCormick* case did not modify, amplify, or otherwise create any right, entitlement, or measure of damages different than previously established in *Jenkins*.[6] Accordingly, the court found that it was without authority to award any "attorney fees, costs and expenses incurred in vindicating their *Jenkins*/UTPA claim." The circuit court further held that "the record is barren of facts or argument which would tend to support Plaintiffs' entitlement to "increased costs and expenses, including increased attorney fees, resulting from the insurance company's use of an unfair business practice in the settlement or failure to

---

[6] *Jenkins v. J.C. Penney Casualty Insurance*, 167 W. Va. 597, 280 S.E.2d 252 (1981), will be discussed *infra*.

5

settle fairly the underlying claim." Hence, the circuit court found that there was no factual basis upon which to award fees on the bad faith claim. The order noted, "as an aside," that inasmuch as the plaintiffs had been awarded reasonable fees, costs and expenses as a result of "substantially prevailing" on the underlying UIM claim that any additional award may be prohibited as being duplicative.

Finally the court found that the conduct of Nationwide did not give rise to a need to otherwise shift the burden of paying attorney fees from the petitioner to Nationwide, because "the complained-of actions [did] not rise to such a level that justice require[d] the extra-ordinary relief sought by Plaintiffs herein."

The Lemasterses filed an appeal to this order insofar as it denied the request for $953,087.44 in attorney fees, costs and expenses associated with the litigation of the bad faith claim.

## II.

### STANDARD OF REVIEW

This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard, and conclusions of law are reviewed *de novo*. Syl. pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).

6

We begin our analysis with a summary of our law relating to the payment of attorney fees in claims filed by insureds against their own insurance company. Two seminal cases establish the foundation for the award of fees in these types of cases: *Hayseeds v. State Farm Fire & Cas.*, 177 W. Va. 323, 352 S.E.2d 73 (1986), and *Jenkins v. J.C. Penney Cas. Ins.*, 167 W. Va. 597, 280 S.E.2d 252 (1981). *Hayseeds* dealt with an action filed by the insured to collect benefits under their insurance contract. We held that the following damages were available to the insured in this type of action:

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

Syl. pt. 1, *Hayseeds*, 177 W. Va. 323, 352 S.E.2d 73.

In *Jenkins v. J.C. Penney Cas. Ins.*, 167 W. Va. 597, 280 S.E.2d 252 (1981), we established a bad faith cause of action under the UTPA and W. Va. Code § 33-11-4(9). We held that

> [a]n implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W. Va. Code, 33-11-4(9); but such implied

7

private cause of action cannot be maintained until the underlying suit is resolved.

Syl. pt. 2, *Jenkins*, 167 W. Va. 597, 280 S.E.2d 252. Furthermore, in *Jenkins* we held that a single isolated violation of the UTPA would not suffice in terms of establishing a general business practice:

> More than a single isolated violation of W. Va. Code, 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of "a general business practice," which requirement must be shown in order to maintain the statutory implied cause of action.

Syl. pt. 3, *Id.* The damages attainable under this type of litigation were not fully explained in *Jenkins*, but in footnote 12, we stated:

> We do not attempt to delineate the entire damage issue on a statutory claim but it obviously does not serve to replicate the damages obtained in the underlying claim. Certainly, increased costs and expenses including the increase in attorney's fees resulting from the failure to offer a prompt fair settlement could be recovered. In an appropriate case, punitive damages may be recovered.

*Id.,* at 609, n.12, 280 S.E.2d at 259, n.12.

We later elaborated on the damages available in a *Jenkins* action in *Dodrill v. Nationwide Mutual Insurance Company*, 201 W.Va. 1, 491 S.E.2d 1 (1996). In *Doddrill*, we specifically discussed footnote 12, and approved an insured's recovery of

8

attorney's fees and costs where benefits were due under their policy and they were required to sue a tortfeasor to collect these benefits. *Id*. at 16, 491 S.E.2d at 16.

Earlier that same year, this Court decided another bad faith case, *McCormick v. Allstate Insurance Company*, 197 W. Va. 415, 475 S.E.2d 507 (1996). In *McCormick*, we distinguished the differences between the filing of an action on the insurance contract to collect benefits arising from the insurance contract, from the action arising from violations of the UTPA. The plaintiff in *McCormick* had instituted a civil action against his insurer, claiming that his insurer failed to properly handle his property damage claim. After a trial on the merits of his complaint, the jury returned a verdict in favor of the plaintiff in the amount of $950.00, well below the amount being sought by the plaintiff. On the basis of that award, the trial court concluded that the plaintiff had not substantially prevailed in the underlying claim. The plaintiff then sought an award of attorney fees and punitive damages against his insurer, arguing that the company acted in bad faith. Because he had not substantially prevailed in the underlying claim, the trial court concluded that the plaintiff was therefore precluded from pursing his claim for punitive damages and attorney fees.

In reversing and remanding the case for further proceedings, we clarified in *McCormick* the separate and distinct nature of the two types of cases and the relief available therein. In Syllabus point 9 of *McCormick*, we held:

9

The conditions and predicate for bringing a case under *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981), are wholly different from those necessary for bringing an underlying contract action or for bringing an action under *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986). Whereas under *Hayseeds* it is necessary that a policyholder substantially prevail on an underlying contract action before he may recover enhanced damages, under *Jenkins* there is no requirement that one substantially prevail; it is required that liability and damages be settled previously or in the course of the *Jenkins* litigation. *Jenkins* instead predicates entitlement to relief solely upon violation of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4(9), where such violation arises from a "general business practice" on the part of the insurer.

Our decision in *McCormick* resulted in a remand to the circuit court for further consideration of the appellant's *Jenkins*-type/UTPA claims. Relying on the following language in *McCormick*, Mr, and Mrs. Lemasters encourage us to expand our jurisprudence in their attorney fee claim:

> This Court believes that, in the circumstances of this case, litigation of the *Jenkins*-type claim is appropriate. The appellant has prevailed in the first phase on his claim that Allstate failed to pay the amount to which the appellant was entitled under the insurance contract. Pursuit of the *Jenkins* claim, if either of the parties elects to proceed, will afford full opportunity to litigate the substance of the remaining issues that were not adequately addressed during the first phase trial had below, including, if supported by the evidence, the issue of whether the reconditioning deductions used by Allstate are a "general business practice", whether, under the applicable *Jenkins* rule, punitive damages should be awarded, and whether appellant should be awarded attorney fees *for vindicating his Jenkins-type* claim and, if so, in what amount (*emphasis supplied*).

10

*Id.*, at 428, 476 S.E.2d at 520.

The Lemasterses asserted further support for their fee request because *McCormick*, used the use of the phrase "for vindicating his *Jenkins*-type claim." They contended that this Court distinguishes attorney fees incurred in bringing the underlying action from those incurred in bringing a successful *Jenkins*-type/UTPA claim. The Court in *McCormick* stated:

> [A]n action under *Jenkins v. J.C.Penney Casualty Insurance Company*, *supra*, and its progeny, is a type of action which is wholly distinct from an underlying contractual action on an insurer's failure to comply with its insurance contract. Such an action is also wholly distinct from a *Hayseeds* action. Further, the conditions and predicate for bringing a *Jenkins*-type case are wholly different from those necessary for bringing an underlying contract action or for bringing a *Hayseeds* action. Whereas under *Hayseeds* it is necessary that a policyholder substantially prevail on an underlying contract action before he may recover enhanced damage, under *Jenkins* there is no requirement that one substantially prevail; it is required that liability and damages be settled previously or in the course of the *Jenkins* litigation. *Jenkins* instead predicates entitlement to relief solely upon violation of the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4(9), where such violation arises from a "general business practice" on the part of the insurer.

> The fundamental holding of *Jenkins* recognizes a private, implied cause of action for violations of W. Va. Code § 33-11-4(9) and permits plaintiff to recover attorney fees and, under the appropriate circumstances, punitive damages, if it can be shown that there was more than a single isolated violation of W. Va. Code § 33-11-4(9) and that the violations indicate a "general business practice" on the part of the insurer . . . .

11

> Since the predicate for seeking relief under *Jenkins* and its progeny does not require that an insured substantially prevail on an underlying action, and since *Jenkins* does allow, under certain conditions, a party to seek reasonable attorney fees and punitive damages, this Court believes that insofar as the trial court's order in the present case precludes the appellant from seeking attorney fees or punitive damages because the appellant failed substantially to prevail below, the trial court's order in the present case was erroneous.

*McCormick*, 197 W. Va. at 427–28, 475 S.E.2d at 519–20.

The circuit court disagreed with the Lemasterses, concluding that this language from *McCormick* did not modify, amplify or otherwise create any right, entitlement or measure of damages different than previously established in the *Jenkins* case. Our review of this decision leads us to the same conclusion. We agree with the circuit court and believe the Lemasterses have misinterpreted our direction in *McCormick*. The aforementioned language in *McCormick* may have created some confusion, but our later case, *Dodrill*, clears up any lingering questions about when attorney fees may be recouped in actions against insurance companies. In *Dodrill*, we clarified the fee issue, stating that attorney fees were awardable only for fees "incurred in the underlying action against a tortfeasor." The circuit court's conclusion that it was without authority to award the petitioners attorney fees, costs and expenses incurred in vindicating their *Jenkins*/UTPA claims is supported by the *Dodrill* case and its specific statement that attorney fees were recoverable in the underlying action against the tortfeasor, as opposed to the present case where the fees arose out of a bad faith action. The Lemasterses cannot direct this Court to any additional authority that directly

12

contradicts the circuit court's conclusion on this issue. We find no error in the circuit court's resolution of the case on this ground.

Mr. and Mrs. Lemasters next argue that while they were awarded fees, costs and expenses pursuant to our holding in *Hayseeds*, the award was inadequate because it did not include those costs associated with the continuing efforts to collect the *Hayseeds* damages. The Lemasterses posit that if the fees are not awarded in recognition of the time, effort and trouble it took to obtain the monies owed under the policy, Nationwide gets the benefit of its own actions by imposing the cost to collect these benefits on the insured. Nationwide does not contest that *Hayseeds* allows an insured, such as Mr. Lemasters, who substantially prevails in the action against the company, to recover attorney fees as long as the attorney services were necessary to obtain payment of the insurance proceeds.[7] Nationwide contests the position of the Lemasterses that the fees

---

[7] The award of fees is not automatic upon an insured "substantially prevailing" in a contract-based claim against his or her insurance company. The court must find that the attorney's services were necessary to collect. We have held,

> "An insured 'substantially prevails' in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount. In either of these situations the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds."

(continued . . .)

13

continue to be incurred until the fees are paid, and would continue to accrue under *Hayseeds* throughout the duration of a related bad faith action.

While the Lemasterses cite "the principles of *Hayseeds*" they cite no direct authority for their belief that *Hayseeds*' damages continue through the duration of a bad faith claim. *Hayseeds* clearly stated the relief available to one who substantially prevails against an insurance company on a contract-based action: The insurer is liable for the insured's reasonable attorneys' fees in vindicating its claim, the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience. In the case at bar, the insurance proceeds were paid and the circuit court awarded those fees shown to be directly associated with obtaining that payment to the Lemasterses. There is simply no authority in our jurisprudence that supports the Lemasterses' contention that the *Hayseeds* damages continue throughout the course of the bad faith litigation. Therefore it was not error for the circuit court to deny additional attorney fees pursuant to *Hayseeds*.

The Lemasterses next argue that they are entitled to these additional fees because of the conduct of Nationwide throughout these proceedings and pursuant to our holding in syllabus point 3 of *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d

---

Syl. pt. 1, *Jordan v. National Grange Mut. Ins. Co.*, 183 W.Va. 9, 393 S.E.2d 647 (1990).

14

246 (1986): There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as "costs," without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Syl. pt. 3, *Sally-Mike*.

In the case *sub judice*, the Lemasterses argue that the conduct of Nationwide throughout these proceedings fits within the mandates of *Sally-Mike* and that fees should be awarded. This conduct included personal attacks on the Lemasterses' counsel, an unwillingness to accept that the Lemasterses had substantially prevailed in the bad faith action, as well as alleged discovery abuses in which the Lemasterses argue that Nationwide vexatiously and unreasonable relitigated issues it had contemporaneously lost in another case. In addition, the Lemasterses argue that the jury's finding of actual malice by Nationwide in the handling of the UIM claim, as well as the finding that the UTPA was violated as a general business practice, warrant fees, costs and expenses. The circuit court declined to award fees upon this ground, making a finding that the conduct about which the Lemasterses complained did "not rise to such a level that justice requires the extra-ordinary relief sought by Plaintiffs herein."

We agree with Lemasterses that, in appropriate cases, *Sally-Mike* recognizes that a circuit court may make certain awards based upon the bad character of a party in the litigation. However, the trial court was in the best position to gauge the conduct of the parties and decide what if any award is appropriate. Herein, the trial court

15

found that "[h]aving presided over much of the pre-trial issues as well as the trial itself," it was "particularly familiar with how the parties and counsel conducted themselves." While the Lemasterses can point to various instances of what they believe constituted vexatious conduct on the part of Nationwide, we review the conclusion of the circuit court for an abuse of discretion. We do not believe it appropriate in this instance to disturb the trial court's ruling that attorney fees not be awarded based upon the conduct of the parties.

Finally, the Lemasterses assert that this Court should adopt a bright-line rule that, as a matter of law, a litigant against whom a finding of actual malice is made and against whom punitive damages are assessed should be required to pay the prevailing party's attorney fees absent extraordinary circumstances showing why it should not.[8] We decline the invitation of the petitioners to do so. The Lemasterses cite no legal authority in support of this change in our jurisprudence. Notably, in *Midkiff v. Huntington National Bank West Virginia*, 204 W. Va. 18, 511 S.E.2d 129 (1998), we declined to sanction an award of fees every time a jury awarded punitive damages. In *Midkiff*, we stated:

> Were we to agree with the argument of the appellant Midkiff, we would be well on our way to erasing the distinction

---

[8] The petitioners suggest that this Court adopt the following as a syllabus point: "Reasonable attorney fees may be awarded as an element of compensatory damages where the court or jury finds punitive damages are warranted."

16

between attorney's fees and punitive damages. We would in essence be finding that every time a jury awarded punitive damages, attorney's fees should be awarded without further examination. We do not agree with this approach.

*Id.* at 20, n.5, 511 S.E.2d at 131, n.5.

We believe this statement in *Midkiff* to be appropriate herein. The determination of whether to award fees is left to the sound discretion of the circuit court. The Lemasterses' proposed automatic award of fees would remove this discretion from the circuit court and is unsupported by our law. As was the case with *Midkiff*, we reiterate our disagreement with an automatic approach and find no error in the circuit court's failure to award fees on this ground.

## IV.

## CONCLUSION

For the foregoing reasons, the order of the Circuit Court of Marshall County entered May 16, 2012, is affirmed.

Affirmed.

17