**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1373**

───────────────

MOSES ENTERPRISES, LLC,

    Plaintiff - Appellee,

  v.

LEXINGTON INSURANCE COMPANY; AIG CLAIMS, INC.,

    Defendants - Appellants.

───────────────

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Robert C. Chambers, District Judge. (3:19-cv-00477)

───────────────

Argued:  March 7, 2023         Decided:  April 28, 2023

───────────────

Before THACKER and HEYTENS, Circuit Judges, and Joseph DAWSON, III, United States District Judge for the District of South Carolina, sitting by designation.

───────────────

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Thacker and Judge Dawson joined.

───────────────

**ARGUED:** Robert Lawrence Massie, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Huntington, West Virginia, for Appellants. William Lowell Mundy, MUNDY & ASSOCIATES, Huntington, West Virginia, for Appellee. **ON BRIEF:** Marc E. Williams, Huntington, West Virginia, James T. Fetter, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Charlotte, North Carolina, for Appellants.

───────────────

TOBY HEYTENS, Circuit Judge:

This case is about whether an award of attorneys' fees was proper under West Virginia law. Because the district court's analysis omitted a required step, we vacate the fee award and remand for further proceedings.

I.

Plaintiff Moses Enterprises, LLC, sells cars. Moses had an insurance policy issued by defendant Lexington Insurance Company, with defendant AIG Claims, Inc. serving as the claims administrator.

While the insurance policy was in place, Moses sold a car to someone using a fake identity. As the reader might guess, the fraudster never paid. Luckily, the policy covered "Trick, Device, and False Pretense." JA 24. But AIG denied coverage. Even though Moses filed a claim the same day it learned the purchase was a sham, AIG concluded Moses did not provide notice of the claim within the policy's required period.

Moses sued Lexington and AIG in federal district court. The complaint made four claims under West Virginia law, including—as relevant here—one for breach of the insurance contract and one for violating the State's unfair trade practices statute. Among other relief, Moses requested "[d]amages for attorney fees." JA 34.[1]

---

[1] Our review revealed "a jurisdictional tangle that could have been avoided by more careful pleading." *Thompson v. Ciox Health, LLC*, 52 F.4th 171, 173 n.1 (4th Cir. 2022). Moses is a limited liability company, but the complaint contains no mention of its members' citizenships. See *Central W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members."). Fortunately for Moses, 28 U.S.C. § 1653 allows "[d]efective allegations of jurisdiction" to (Continued)

2

Moses moved for partial summary judgment, asking the district court to hold as a matter of law that Lexington was "obligated to pay Moses for the loss it sustained as a result of the purchase of a 2017 Toyota by a purchaser who used a stolen identity." D. Ct. ECF 25, at 1. While that motion was pending, defense counsel wrote Moses a short letter. It read, in part:

> Because my clients remain committed to resolving all claims fairly and reasonably, we are issuing a check to Moses Enterprises, LLC for the purchase price of the vehicle . . . plus the . . . statutory interest rate . . . accruing from the date of the loss.

JA 213. The check—which was mailed separately—listed its "reason for payment" as "case 3:19-cv-00477," this suit's number on the district court's docket. JA 215. Moses returned the check without cashing it. In a letter, Moses's counsel explained: "As I informed you prior to you sending this check, I did not agree to accept this check and that I would return it." JA 216.

The district court granted partial summary judgment for Moses on the breach of contract claim but resolved only liability—not damages. Nearly a year later, the court denied the defendants' motion for summary judgment, which argued Moses's compensatory damages were zero because Moses rejected the check the defendants had sent. In the district court's view, "[i]t borders on absurd to argue that mailing opposing counsel an unwanted check is sufficient to settle or moot a claim," particularly where

---

"be amended" on appeal, and Moses has provided information showing its members are all West Virginia citizens. Because neither defendant is a citizen of West Virginia and the amount in controversy exceeds $75,000, the district court had subject matter jurisdiction under 28 U.S.C. § 1332(a).

3

"Defense Counsel was told *before* the check was sent that [Moses] would not settle for the amount proposed by the Defendants." JA 95. The court further concluded "a material question of fact remain[ed] as to what damages [Moses] [was] entitled to as a result of Defendants' breach of contract." JA 94.

"Litigation continued." JA 261. By the eve of trial, the dispute had narrowed to two claims—the claim for violating West Virginia's unfair trade practices statute and damages on the breach of contract claim.

The day before trial, the parties settled both claims, but continued to disagree about the amount of attorneys' fees to which Moses was entitled. Six months later, the district court awarded Moses "$293,135.45 in attorney's fees and costs," representing "the entire amount of attorney's fees incurred until the final resolution of the case." JA 265, 267.

We review an award of attorneys' fees for abuse of discretion. See *Colorado Bankers Life Ins. Co. v. Academy Fin. Assets, LLC*, 60 F.4th 148, 153 (4th Cir. 2023). In so doing, we review any underlying factual findings for clear error, see *Andrews v. America's Living Ctrs., LLC*, 827 F.3d 306, 312 (4th Cir. 2016), while reviewing any "legal determinations"—including "the proper interpretation of" state law—de novo. *Colorado Bankers*, 60 F.4th at 153. We look to decisions of "the State's highest court" for "the final word about what . . . state law means." *Id.*

## II.

As a general matter, West Virginia follows the "American rule that both sides of a civil controversy must pay their own attorneys' fees—win, lose, or draw." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 78 (W. Va. 1986). But West Virginia's highest

4

court has abrogated that rule for "prevailing claimants in property damage insurance cases." *Id.* at 79. "[W]henever a policyholder must sue his own insurance company over any property damage claim, and the policyholder substantially prevails in the action," West Virginia law makes the insurance company "liable for the payment of the policyholder's reasonable attorneys' fees." *Id.* at 80.

The parties agree the policy at issue was one for property damage and that Moses substantially prevailed. See *Jordan v. National Grange Mut. Ins. Co.*, 393 SE.2d 647, 650 (W. Va. 1990) (holding a policyholder may "substantially prevail[] in the litigation as a result of a settlement or as the result of a jury verdict"). There is thus no dispute Moses "may recover some amount of attorney's fees." JA 262. The question is: How much and for what?

### A.

We reject the defendants' argument that Moses is not entitled to any fees for work done after Moses returned the defendants' check or after the district court granted partial summary judgment on the contract claim. True, West Virginia law allows fee-shifting only for work "necessary to obtain payment of the insurance proceeds." *Jordan*, 393 S.E.2d at 652. But the district court made no reversible error in rejecting the view that any work done after those dates inherently flunks the "necessary to obtain payment" test.

The defendants' first proffered date rises or falls on a contention that the rejected check was payment for "the amount due under the insurance policy." Defs.' Br. 4–5. But the district court made a factual finding that the check "was a settlement offer" for the entire litigation, JA 265, and that finding is not clearly erroneous. The defendants' letter

5

announced its purpose as "resolving *all claims*"—not just the breach of contract claim—"fairly and reasonably," JA 213 (emphasis added), and the check's "reason for payment" line referenced the docket number for the case as a whole, JA 215. Moses had no duty to settle its entire case for an amount its adversaries insisted represented full compensation for one of Moses's discrete claims. Nor was Moses required to open itself up to an argument it had done so by cashing the defendants' "unsolicited" check. JA 264.

The district court's later grant of partial summary judgment also did not obviate the need for further work to "obtain payment of the insurance proceeds." *Jordan*, 393 S.E.2d at 652. For one thing, Moses had no way of knowing whether the defendants would appeal the district court's ruling. But even leaving that aside, the district court's grant of partial summary judgment did not fully resolve the breach of contract claim because it left open the amount of damages. Indeed, by stating "a material question of fact remains as to what damages the Plaintiff is entitled to as a result of Defendants' breach of contract," JA 94, the district court invited further attorney time to resolve "what is actually payable under the insurance policy," JA 230.[2]

---

[2] It would not matter if we agreed with the defendants that "liability and damages for the contract claim were either entirely settled by, or easily mathematically determinable after, the district court's [partial] summary judgment order." Defs.' Br. 17. The defendants offer no reason to believe Moses would still have been paid had its lawyers simply patted themselves on the back and stopped working. And any disputes about *how much* additional work was "necessary to obtain payment of the insurance proceeds" go to the amount of compensation for any post-summary judgment work, not whether such work is compensable at all. *Jordan*, 393 S.E.2d at 650–52 (emphasis added).

6

B.

At the same time, we reject Moses's contention that the district court committed no legal errors in concluding Moses was entitled to "the entire amount of attorney's fees incurred until the final resolution of the case." JA 265, 267. We need not—and do not—resolve whether any particular figure could survive abuse of discretion review. Instead, we conclude the district court's analysis missed a step and thus vacate and remand for further proceedings.

The parties litigated and settled two claims, but only one of them entitles Moses to fee shifting under West Virginia law. In Count One of its complaint, Moses accused the defendants of breaching a first-party insurance contract. That claim is eligible for fee shifting. See *Hayseeds*, 352 S.E.2d at 80. In Count Two, Moses charged the defendants with violating the West Virginia Unfair Trade Practices Act "in their handling of [Moses's] claim." JA 30. That "type of action"—which West Virginia courts call a *Jenkins* claim—requires showing an insurance company's "general business practice" of "bad faith settlement." *McCormick v. Allstate Ins. Co.*, 475 S.E.2d 507, 514–15, 519 (W. Va. 1996). And West Virginia's highest court (the Supreme Court of Appeals) has held fee shifting is unavailable for a *Jenkins* claim. See *Lemasters v. National Mut. Ins. Co.*, 751 S.E.2d 735, 742–43 (W. Va. 2013) (per curiam).

*Lemasters* is closely on point and largely resolves this case. In *Lemasters*, the plaintiffs sought attorneys' fees for both a breach of contract claim and a *Jenkins* claim. See *Lemasters*, 751 S.E.2d at 738–39. The trial court denied fee shifting for work "incurred in the prosecution of" the *Jenkins* claim (*id.* at 738), and the plaintiffs appealed, relying on

7

dicta in an earlier decision stating that "*Jenkins* does allow, under certain conditions, a party to seek reasonable attorney fees." *Lemasters*, 751 S.E.2d at 742 (quoting *McCormick*, 475 S.E.2d at 519). West Virginia's highest court affirmed the trial court's "conclusion that it was without authority to award the [plaintiffs] attorney fees, costs and expenses incurred in vindicating their *Jenkins/*[Unfair Trade Practices Act] claims." *Id.* It also contrasted work on a *Jenkins* claim with work "necessary to obtain payment of the insurance proceeds" in "a contract-based action," for which fee shifting is available. *Id.* at 742–43.

The district court viewed *Lemasters* as distinguishable because "[h]ere, unlike in *Lemasters*, . . . the underlying [contract] action . . . and the bad faith action were pursued as one singular claim, which was not resolved or paid until the [final] settlement." JA 264. We respectfully disagree. For one thing, West Virginia's highest court has made clear Moses's breach of contract claim (for which fee shifting is available) and its *Jenkins* claim (for which fee shifting is unavailable) are not "one singular claim." To the contrary, it has said such claims are "wholly distinct," *McCormick*, 475 S.E.2d at 519, and repeatedly "distinguished . . . the filing of an action on the insurance contract to collect benefits arising from the insurance contract, from [an] action arising from violations of the" unfair trade practices statute, *Lemasters*, 751 S.E.2d at 741.

Yes, *Lemasters* involved a different procedural posture. But nothing in the Supreme Court of Appeals' analysis suggests those distinctions make a difference. As a federal court sitting in diversity, our role is to predict what West Virginia's highest court would do, not to hunt for possible bases for distinguishing this case from its past decisions. And here *Lemasters* reiterated the rule from *Hayseeds* by stating that fee shifting is allowed only for

8

an insured "vindicating its claim" "to collect benefits under [its] insurance contract," not for "a bad faith action." 751 S.E.2d at 740, 743.

The district court also cited "the public policy underpinning *Hayseeds*" as supporting an award of attorneys' fees for all of Moses's claims. JA 265. But neither Moses nor the district court has identified how pursuing a "wholly distinct" cause of action for an insurance company's unfair trade practice of "bad faith settlement," *McCormick*, 475 S.E.2d at 514, 519, could be "necessary" to secure "payment of the insurance proceeds," *Jordan*, 393 S.E.2d at 652. Just because two things happen at the same time— here, pursuit of the contract claim and the *Jenkins* claim—does not mean one is "necessary" to the other. *Id.*

Because the district court committed legal error in awarding Moses the full amount of its requested fees without determining whether any of the work was properly attributed only to the *Jenkins* claim, we vacate the fee award and remand for further proceedings. On remand, the district court must—aided by appropriate submissions by the parties—at least attempt to determine which portions of the requested fees were "necessary to obtain payment of the insurance proceeds" and then award fees based on that work only. *Lemasters*, 751 S.E.2d at 743.

The regime of awarding attorneys' fees for federal civil rights litigation provides a helpful analog for the district court's task. Although a "prevailing party" in that context may receive "a reasonable attorney's fee," 42 U.S.C. § 1988(b), a litigant is not entitled to fees for *all* claims if successful "on only some . . . claims," *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Because "no fee may be awarded for services on the unsuccessful

9

claim[s]" (*id.* at 435), a court awarding fees under Section 1988 must attempt to separate the compensable work on the successful claims from non-compensable work on the unsuccessful ones. See *id.* at 435–37.

None of this is to prejudge the proper fee award in this case. Maybe the work Moses's attorneys did for the *Jenkins* claim was so intertwined with their work on the breach of contract claim that some (or all) of the time cannot be disentangled. Cf. *Hensley*, 461 U.S. at 435; see also Pls.' Br. 6 (so arguing). Or maybe—as Moses's counsel asserted at oral argument—none of the requested fees were for work done on the *Jenkins* claim. See Oral Arg. 34:40–35:23. But the district court made no findings about these issues. And because "we are a court of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), we leave to the district court the initial task of assessing which of the requested fees were compensation for "services . . . necessary to obtain payment of the insurance proceeds," *Lemasters*, 751 S.E.2d at 743.

\*    \*    \*

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

10