UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-7553

BRIAN DAMON FARABEE,

Petitioner - Appellant,

versus

GENE M. JOHNSON, Director of the Virginia
Department of Corrections,

Respondent - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Henry Coke Morgan, Jr., District
Judge.  (CA-02-960-2)

Argued:  October 26, 2004          Decided:  April 22, 2005

Before WIDENER, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.  Judge Gregory wrote a
dissenting opinion.

**ARGUED:** Brad Richard Newberg, ARNOLD & PORTER, L.L.P., Washington,
D.C., for Appellant.  Michael Thomas Judge, Assistant Attorney
General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond,
Virginia, for Appellee.  **ON BRIEF:** Jerry W. Kilgore, Attorney
General of Virginia, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Brian Damon Farabee filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction and sentence on the grounds that (1) the prosecutor failed to disclose evidence favorable to him, (2) his prosecution violated his protection against double jeopardy, and (3) he had been found not guilty by reason of insanity in a prior proceeding and thus could not be prosecuted under Virginia law. The district court ruled that Farabee's claims were procedurally defaulted and dismissed the petition. A judge of this Court granted Farabee a certificate of appealability to present the question whether Farabee's mental illness should excuse his procedural defaults. We conclude that Farabee cannot demonstrate that his defaults actually resulted from his mental illness, and we therefore affirm the ruling of the district court.

I.

Farabee has suffered from psychiatric problems since childhood and first entered a psychiatric institution at the age of ten. Over the last fifteen years, Farabee has received treatment in more than twenty mental institutions. In November 1998, while a patient at Eastern State Hospital, Farabee set fire to his bed sheets in a suicide attempt. The Commonwealth of Virginia charged Farabee with arson. In July 1999, after a psychiatric evaluation concluded that

Farabee was mentally ill at the time of the arson, the state court adjudged Farabee not guilty by reason of insanity ("NGRI"). Pursuant to Va. Code Ann. § 19.2-182.3 (Michie 2004), the court then ordered Farabee committed to Central State Hospital.[1]

Under Virginia law, the court that orders a defendant committed to a state mental hospital must hold a hearing twelve months after the date of commitment to determine whether the defendant continues to need inpatient hospitalization. Id. § 19.2-182.5. Based upon a psychiatric evaluation and any other evidence presented at the hearing, the state court must (i) release the acquitee from confinement if he does not need inpatient hospitalization and does not meet the criteria for conditional

_____

[1]Under § 19.2-182.3, a trial court must commit a defendant acquitted as NGRI if it finds that the defendant is mentally ill and in need of hospitalization. This statute further provides that "[t]he decision of the court shall be based upon consideration of the following factors:

1.  To what extent the acquitee is mentally ill or mentally retarded, as those terms are defined in § 37.1-1;

2.  The likelihood that the acquitee will engage in conduct presenting a substantial risk of bodily harm to other persons or to himself in the foreseeable future;

3.  The likelihood that the acquitee can be adequately controlled with supervision and treatment on an outpatient basis; and

4.  Such other factors as the court deems relevant."

Id.

3

release . . . ; (ii) place the acquitee on conditional release if he meets the criteria for conditional release, and the court has approved a conditional release plan . . . ; or (iii) order that he remain in the custody of the Commissioner [of the Department of Mental Health, Mental Retardation, and Substance Abuse Services] if he continues to require inpatient hospitalization based on consideration of the factors set forth in § 19.2-182.3." Va. Code Ann. § 19.2-182.5(C). Pursuant to this statute, the state court that committed Farabee to Central State Hospital scheduled a hearing for July 2000 to assess his condition, and after this hearing Farabee remained in the custody of Central State Hospital.[2]

In the spring of 2000, Farabee was involved in physical altercations with hospital staff at Central State Hospital. The Commonwealth charged Farabee with two counts of malicious wounding, and on August 25, 2000, Farabee, with the assistance of counsel, pled guilty to these charges. In the course of his plea colloquy, Farabee stated that he understood the nature of the charges against him and that he was satisfied with the efforts of his counsel. The prosecutor noted that Farabee had been adjudged NGRI in connection

---

[2]The dissent cites the petitioner's briefs to support its assertion that the judge on Virginia's Ninth Judicial Circuit Court who initially committed Farabee for the arson charge "found that Farabee was still mentally ill." Post, at 14. Although Farabee requested permission to supplement the record with a document purporting to establish this "fact," that request was denied. Further, the state has not had the opportunity to challenge Farabee's assertion. We limit our recitation of the facts to those actually contained in the record.

4

with the 1998 arson charge but that there was no issue concerning his competency to stand trial. J.A. 46. According to Farabee's counsel, a sanity evaluation had concluded that there was "not a problem with [Farabee's] sanity" at the time of the instant offenses. J.A. 46-47. A Virginia state court accepted Farabee's plea, specifically finding that Farabee "underst[ood] the nature of the charges and the consequences of [his] plea[]." J.A. 48. The court then sentenced Farabee to consecutive twenty-year prison terms but adjusted that sentence so that Farabee was required to serve only three years and four months in prison. Farabee did not appeal his conviction or sentence on the malicious wounding charges.

Two years later, on August 8, 2002, Farabee filed his initial petition for writ of habeas corpus in Virginia state court. Farabee argued that his conviction for malicious wounding was unlawful because he had previously been adjudged NGRI and under Virginia law, he could not be prosecuted for any offense while maintaining that status. Farabee requested an evidentiary hearing on this claim. The court dismissed Farabee's petition on the ground that the claim asserted had not been presented to the trial court or on direct appeal. See Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974). Farabee did not appeal the dismissal of this initial state habeas petition.

5

On November 15, 2002, Farabee filed a second state habeas petition. In addition to the NGRI claim, Farabee alleged in this petition that his conviction was unlawful because the prosecutor failed to disclose information favorable to him and his prosecution violated his protection against double jeopardy. Again, Farabee requested an evidentiary hearing. The court dismissed this petition on the grounds that it was untimely and successive under Virginia law. Farabee did not appeal this dismissal.

In December 2002 -- while his second state habeas petition was still pending -- Farabee commenced this federal habeas action under § 2254, attacking his conviction on the same grounds he asserted in state court. The magistrate judge recommended that the petition be dismissed because Farabee's claims were procedurally defaulted. Specifically, the magistrate judge noted Farabee's (1) failure to file a direct appeal of his conviction in state court, (2) failure to appeal the dismissals of his state habeas petitions, and (3) failure to file a separate habeas petition with the Virginia Supreme Court. Notwithstanding Farabee's objections, the district court adopted the magistrate judge's recommendation and dismissed Farabee's habeas petition. Farabee appealed this ruling and filed an informal brief in this court. A judge of this Court granted a certificate of appealability on the question whether Farabee's mental illness should excuse his procedural defaults.

II.

A petitioner in state custody seeking federal habeas relief must exhaust all remedies available in state courts. 28 U.S.C. § 2254(b)(1)(A). To satisfy this exhaustion requirement and avoid procedural default, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

To overcome a procedural default in a habeas proceeding, the petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). The Supreme Court has stated that "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external impediments include a factual or legal basis for a claim that was not reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel. Id. To establish actual prejudice, the petitioner "must show not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

7

infecting his entire [proceeding] with error of constitutional dimensions." Id. at 494. (internal quotations and emphasis omitted).

Assuming that profound mental illness may constitute cause to excuse a procedural default in certain circumstances, see Thomas v. Cunningham, 313 F.2d 934, 937 (4th Cir. 1963); cf. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004), Farabee has not demonstrated that any mental illness actually caused his procedural defaults. Although Farabee points to facts suggesting that he suffered from mental illness at particular points after his conviction, those facts do not establish that his condition rendered him unable to exhaust his state court remedies during the appropriate periods.

First, Farabee points to the fact that he was institutionalized from September 2000 to November 2000, the period during which he was required to file a direct appeal from his conviction. According to Farabee, this fact is "direct evidence" of his "mental incompetence at the time he was supposed to be appealing his conviction." Appellant's Br. at 10-11. We disagree. Although it is certainly true that Farabee was institutionalized during the relevant period, that fact alone does not establish Farabee's mental condition or describe his capacity to comply with procedural requirements in state habeas litigation. Indeed, under Virginia law, it is entirely possible that Farabee remained in the custody of Central State Hospital simply because he continued to

8

require inpatient hospitalization based on the likelihood that he would engage in conduct posing a risk of injury to himself or others. See Va. Code Ann. § 19.2-182.5(C).[3] Moreover, the record shows that Farabee was examined and found to be both sane at the time of the malicious wounding offenses -- in the spring of 2000 -- and competent to stand trial in August 2000.[4] Given the fact that Farabee was institutionalized during those periods as well, the dissent's claim that the fact of institutionalization establishes cause for a procedural default is simply untenable.

Second, Farabee points to the fact that on March 14, 2001 -- during the time in which he should have been preparing a separate habeas petition for the Supreme Court of Virginia -- he attempted suicide by lacerating his arms and eating glass and batteries. At most, this fact establishes that Farabee was in no condition to prepare or file the petition on that date or in the several days before and after that date. Farabee had two years from the date of

---

[3]It is simply not the case, as the dissent suggests, that a person committed to a mental hospital in Virginia must remain insane throughout the duration of his commitment. Given the specific provisions of § 19.2-182.3, the mere fact of continued commitment does not establish the nature or characteristics of the individual's particular condition, much less his ability to understand and appreciate the requirements of state and federal habeas litigation.

[4]During Farabee's August 2000 guilty plea proceedings, his trial counsel represented to the court that "there is not a problem with the sanity," J.A. 46, and further stated that he had "a sanity evaluation that says there wasn't a problem with the sanity at the time of these offenses," J.A. 47, i.e., while Farabee was committed to Central State Hospital.

9

his conviction to file a habeas petition with the state supreme court, and evidence of his condition <u>on one particular day</u> does not establish that he was unable to prepare and file that petition <u>throughout the two-year period</u> allowed by law.

Other evidence suggests that Farabee was able to prosecute his state appeals. A Virginia court found Farabee competent prior to the entry of his guilty plea, even after the prosecutor alerted the court to the fact that Farabee had been adjudged NGRI in a prior proceeding. That court made a specific finding that Farabee "underst[ood] the nature of the charges and the consequences of [his] plea[]." In his initial state habeas petition, Farabee challenged the lawfulness of his detention in a Department of Corrections facility in light of his NGRI status. According to Farabee, he could only be detained in a state mental health facility. Farabee further noted that he had asserted similar claims in a civil rights complaint under 42 U.S.C. § 1983. In connection with this initial state habeas petition, Farabee specifically requested a "plenary hearing." J.A. 73. Farabee then filed a second state habeas petition, asserting in addition to the NGRI claim two federal constitutional claims. Farabee's allegations made specific reference to relevant Virginia statues and federal constitutional provisions, and he offered reasons why these claims were not offered in his first petition. Farabee also requested an evidentiary hearing in connection with this state

habeas action.  In sum, it is clear from the record that during the periods when Farabee was required to file a direct appeal, prepare a petition for the state supreme court, and appeal the dismissal of his initial habeas petition, he was able to prosecute his state habeas actions in important respects.

Moreover, Farabee's conduct of this federal litigation suggests that he was competent to participate in habeas proceedings during the period when he should have appealed the dismissal of his second state habeas petition.  Farabee filed his § 2254 petition in December 2002, <u>before</u> the state court dismissed his second state habeas petition.  In the district court, Farabee filed a substantive § 2254 petition alleging various constitutional violations in terms and with a degree of specificity indicating careful preparation by a prison inmate.  He also filed objections to the magistrate judge's report and recommendation and upon the district court's dismissal of the petition initiated this appeal and filed an informal brief.  All of this evidence suggests that Farabee's condition was not uniform over time and that there were times when he was able to prosecute this litigation.  Given this evidence, we conclude that Farabee has failed to demonstrate that any mental illness actually caused his several procedural defaults.[5]

---

[5]Because we find that Farabee cannot demonstrate cause to excuse his defaults, we need not consider the question whether he can demonstrate actual prejudice.

The dissent wonders what more we require from Farabee. We require nothing more than a showing that his mental illness <u>actually</u> <u>caused</u> his procedural defaults. It is not enough for a petitioner to show that there existed at the time of his procedural defaults certain conditions external to the defense; the petitioner must show that those external conditions actually "impeded [his] efforts to comply" with procedural requirements and thus caused his default. <u>Murray</u>, 477 U.S. at 488. Farabee has presented no evidence establishing, for instance, that his mental illness interfered with his ability to appreciate his litigation position or to make rational decisions concerning the litigation during the entirety of the relevant time periods, <u>see</u> <u>Holt v. Bowersox</u>, 191 F.3d 970, 974 (8th Cir. 1999), so that he was unable to consult with counsel, file pleadings, or otherwise comply with state procedural requirements, <u>see</u> <u>Malone v. Vasquez</u>, 138 F.3d 711, 719 (8th Cir. 1998); <u>see</u> <u>also</u> <u>Smith v. Newsome</u>, 876 F.2d 1461, 1465 (11th Cir. 1989) (assuming that "a pro se habeas petitioner who lacked the mental capacity to understand the nature and object of habeas proceedings and to present his case for habeas relief in a rational manner" could establish cause to excuse a procedural default). In the absence of such evidence, and considering the fact that Farabee was able, despite his mental illness, to comply with certain procedural requirements in habeas litigation, we cannot say that the district court erred when it ruled that Farabee

12

had not demonstrated cause to excuse his several procedural defaults.

## III.

Farabee has asserted that his mental illness constitutes cause to excuse his several procedural defaults, but he has failed to offer any evidence to connect his mental state to those defaults. Because Farabee has not shown that any mental illness actually caused his failure to exhaust available state court remedies, we affirm the district court's dismissal of Farabee's habeas petition.

AFFIRMED

GREGORY, Circuit Judge, dissenting:

Because Farabee has provided sufficient evidence of his mental incapacity, I respectfully dissent. As the majority recognizes, Farabee has been in and out of mental institutions -- mostly in -- since he was ten. Indeed, he was institutionalized when he (1) committed the offense for which he was convicted, (2) pleaded guilty, and (3) should have prepared and filed his direct appeal. On July 21, 1999, Judge Samuel T. Powell of Virginia's Ninth Judicial Circuit Court found Farabee Not Guilty by Reason of Insanity. J.A. 28-29. This Order explicitly holds that Farabee "remains under the jurisdiction of this court and shall not be released from custody and inpatient hospitalization without further Order of the court." J.A. 29. As Virginia admitted at oral argument, this order has not been lifted. Rather, shortly before his plea hearing, Judge Powell apparently found that Farabee was still mentally ill and will remain committed after serving his jail sentence. See Appellant's Br. at 4, 11 n.4; Reply Br. at 3, 12.[1] Throughout his commitment Farabee was given powerful anti-psychotic drugs with serious side effects.[2] Moreover, during the time when Farabee should have prepared his subsequent legal papers, he was

---

[1]The majority notes that Judge Powell's 2000 order is not in the record. Ante at n.2. Yet given the plainly quoted language of the July 21, 1999 order, Virginia squarely shoulders the burden of showing that the order of mental illness has been lifted. It has not, of course, shown this.

[2]Despite knowing that Farabee was a mental patient, the sentencing judge never once inquired about Farabee's medications nor noticed the Ninth Judicial Circuit's recent decision to continue Farabee's commitment. See J.A. 39-51.

14

sent to the prison's psychiatric unit because he attempted suicide by eating glass and batteries and slitting his wrists.

I do not know what more the majority wants from Mr. Farabee. The majority concedes that mental incapacity may constitute cause to excuse procedural default. Ante at 8 (citing Thomas v. Cunningham, 313 F.2d 934, 937 (4th Cir. 1963) and United States v. Sosa, 364 F.3d 507, 512 (4th cir. 2004)). The majority, however, finds that "Farabee has not demonstrated that any mental illness actually caused his procedural defaults." Id. I disagree. Farabee's procedural problems all arise from his failure to directly appeal his sentence. But during the time he had to file this appeal he was committed to Central State Hospital. Thus, the majority would have us believe Virginia's extraordinary proposition that a person it deems of insufficiently sound mind to live outside of a mental institution or, for example, transfer title in land, is simultaneously sane enough to properly prosecute appeals.[3]

Next, the majority concludes that Mr. Farabee's most recent suicide attempt "[a]t most . . . establishes that Farabee was in no

---

[3]In the majority's words, the claim is that Farabee could have been kept committed simply because of the possibility that "he would engage in conduct posing a risk of injury to himself or others." Ante at 8. But a prisoner's showing of adjudged insanity or involuntary commitment should at least set a strong, but perhaps rebuttable, presumption of "profound mental incapacity." This would again shift the burden to the state -- plainly in a better position than a mental patient -- to establish that its ward was somehow simultaneously competent to prosecute appeals but too mentally ill to circulate with society.

15

condition to prepare or file the petition on that date or in the several days before and after that date." Id. at 9. This, of course, discounts the baseline fact that before, during, and apparently after his suicide attempt Farabee was adjudicated too mentally ill to warrant punishment by a Virginia Circuit Court judge. The majority's final argument is that Farabee could prosecute his appeals "in important respects." Ante at 11. But this is textbook bootstrapping: I fail to see why the fact that Farabee filed some procedurally improper briefs counts as evidence that he was sane enough to not excuse filing other procedurally improper briefs.

Virginia cannot be allowed to have it both ways: it cannot keep a man committed and simultaneously claim that he is perfectly competent to timely represent himself in appellate proceedings within their courts. Such overreaching is simply a symptom of the sad conflation of prison and involuntary commitment for treatment of mental illness. Virginia essentially keeps Farabee in inescapable no-man's land, calling him too sane to excuse a procedural error but not sane enough to live outside a mental hospital. I can only conclude that such an approach violates Farabee's due process rights. Accordingly, I dissent.

16