**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18–6648**

BRIAN DAMON FARABEE,

               Petitioner – Appellant,

     v.

HAROLD W. CLARKE, Director of the VA DOC; JACK BARBER, Commissioner
of the DBHDS,

               Respondents – Appellees.

**No. 18–7225**

BRIAN DAMON FARABEE,

               Petitioner – Appellant,

     v.

HAROLD W. CLARKE, Director of the VA DOC,

               Respondent – Appellee.

**No. 18–7228**

BRIAN DAMON FARABEE,

               Petitioner – Appellant,

v.

SUPERINTENDENT, Meherrin River Regional Jail; VIRGINIA DEPARTMENT OF CORRECTIONS; COMMISSIONER, of the DBHDS

Respondents – Appellees.

Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, Chief District Judge. (2:16-cv-00268-MSD-JFA; 2:16-cv-00661-MSD-LRL; 2:15-cv-00256-MSD-LRL)

Submitted: May 8, 2020                                    Decided: July 22, 2020

Before GREGORY, Chief Judge, WYNN, Circuit Judge, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

Vacated and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Bell joined.

Mark W. Mosier, Jordan L. Moran, Adam L.D. Stempel, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Mark R. Herring, Attorney General, Victoria N. Pearson, Deputy Attorney General, Eugene P. Murphy, Senior Assistant Attorney General, Toby J. Heytens, Solicitor General, Martine E. Cicconi, Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Zachary R. Glubiak, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

2

GREGORY, Chief Judge:

This consolidated appeal relates to the dismissal of Brian Damon Farabee's three habeas petitions. Farabee has a long and tragic history of mental illness and has been in and out of various mental institutions and prisons—unfortunately, mostly in prisons—since he was ten. In 1999, Virginia accepted responsibility for Farabee's mental treatment and physical care after he was acquitted of an arson charge by reason of insanity. Farabee contends that, in the two decades since, Virginia has not fulfilled its responsibilities. Instead, it has cycled him between numerous prisons (where care has been denied) and dozens of psychiatric facilities (where care has been inadequate). He alleges that as far back as 2005, Virginia put him in an escapable quarry—finding him to be simultaneously too sane to avoid incarceration when his mental illness manifests physically and not sane enough to live outside a psychiatric facility. He is now 41, and still seeks a remedy. Today, we make the unremarkable finding that Virginia's alleged constitutional violations were sufficiently pled in Farabee's petitions. He deserves, finally, to have the opportunity to present his claims that he was denied the legal process he is due and the medical treatment he needs. For the following reasons, we vacate the dismissals of Farabee's claims and remand for further proceedings.

I.

This consolidated appeal concerns three habeas petitions Farabee filed in the district court. First, in June 2015, Farabee filed a petition pursuant to 28 U.S.C. § 2254, challenging the district court's final order accepting the magistrate judge's

3

recommendation to dismiss Farabee's claims related to his incarceration following the revocation of a 2015 suspended sentence.[1]  Second, in June 2016, while his first petition was still pending in the district court, Farabee filed a petition pursuant to 28 U.S.C. § 2241. Finally, in November 2016, while his first § 2254 petition was on appeal, Farabee filed another petition pursuant to § 2254.  The issues in the three petitions overlap and arise from the same revocation proceedings, and both the magistrate judge and district court cross-referenced the three petitions in their recommendations and orders.  Thus, we shall also consider them together.

## A.

Farabee has an extensive and tragic history of mental illness and a difficult relationship with the Virginia Department of Corrections ("VDOC").  *See generally Farabee v. Yaratha*, 801 F. App'x 97 (4th Cir. 2020); *Farabee v. Johnson*, 129 F. App'x 799 (4th Cir. 2005).  He endured years of drug and physical abuse, began to self-harm at age 10, and entered a psychiatric institution at around the same age.  Between ages 12 and 13, he also experienced stretches of homelessness.  And since Farabee was 13 years old, he has been continually confined in hospitals or correctional facilities.

In 1998, at age 20, Farabee was a patient at Eastern State Hospital and attempted to commit suicide by barricading himself in his room and setting fire to his bed sheets. Virginia then charged him with arson and destruction of property.  To assess Farabee's

---

[1] Notably, a different panel previously vacated the district court's order dismissing *with* prejudice Farabee's § 2254 petition for failure to fully exhaust state court remedies. After remand, the district court issued its final dismissal order on September 21, 2018.

mental state, the court referred him for an evaluation by Dr. Kenneth McWilliams, a clinical psychologist. Dr. McWilliams diagnosed Farabee with borderline personality disorder and noted that other doctors who had treated Farabee had offered the same diagnosis. Dr. McWilliams opined that "Farabee may well meet [the] legal criteria for an [insanity] defense."[2] *Yaratha*, 801 F. App'x at 99. In 1999, Farabee was found not guilty by reason of insanity due in part to Dr. McWilliams's evaluation and was committed to Central State Hospital.

In March 2000, shortly after his commitment, Farabee was charged with—and later pled guilty to—two counts of malicious wounding. The state court sentenced Farabee to 20 years in prison, suspending all but three years and 4 months and placing him on supervised probation for 20 years. In 2002, while serving his sentence at Sussex I State Prison, Farabee was again charged with malicious wounding for an altercation involving another inmate. At sentencing, though Farabee asked the court to commit him, the court instead could not "find any clear and convincing evidence that Farabee was mentally ill and no determination of insanity [had] been made" at the time of sentencing. J.A. 182. Accordingly, the court sentenced Farabee to 10 years in prison for this malicious wounding

---

[2] Dr. McWilliams also opined that Farabee required "much more intensive and sophisticated therapy for childhood abuse/neglect issues than he [was] currently receiving"; that he was "unlikely to find such therapy within a state hospital"; and that hospitalizing Farabee without giving him the therapy he needed "may well result in a life sentence to a psychiatric hospital" because "long-term placement in institutional settings virtually never prove[s] useful for treatment of borderline personality disorder." *Yaratha*, 801 F. App'x at 99–100.

5

charge. He served the two sentences until his release in 2012, when he was then recommitted to Central State Hospital.

B.

In April 2015, Virginia moved in state court to revoke Farabee's suspended sentence from 2000—the two counts of malicious wounding—for an alleged violation of his conditions of supervised release. In a violation letter, Farabee's probation officer stated that Farabee had recently been convicted of misdemeanor assault and battery in Central State Hospital.[3] The state court then ordered Farabee to show cause why his suspended sentence should not be revoked and, shortly after the order to show cause was issued, appointed Linda Tomlin to represent him in revocation proceedings.[4] Tomlin promptly moved for a competency hearing, and the court appointed Dr. Evan Nelson to prepare an evaluation. Farabee apparently "declined to come to the court-ordered forensic psychological interview . . . as he had refused many times before," so Dr. Nelson prepared an evaluation "on a record review only." J.A. 543, 548.

Specifically, Dr. Nelson determined that Farabee's "chart notes were abundant and indicated an intelligent man who could parse a situation, decide on a goal, and act up to manipulate to get what he wanted." J.A. 548. Dr. Nelson also found "no indications in the

---

[3] Farabee appealed his conviction and Virginia ultimately dismissed the charge against him, explaining that its decision did not "reflect[] its assessment of the strength of its evidence" but rather the "prioritization of resources [and] desire to minimize the damage [Farabee] might possibly inflict (e.g., assaultive behavior when brought to the courthouse . . . [and] damage to transport vehicles and facilities . . . )." J.A. 570.

[4] Tomlin had previously represented Farabee in 2003 but had withdrawn after he filed complaints against her with the Virginia State Bar.

records that [Farabee] was psychotic, depressed, manic, excessively anxious, suffering dissociative experiences, or severely cognitively impaired." *Id.* Dr. Nelson thus concluded the psychological evidence did not rebut the presumption of competency for Farabee. The court then scheduled a competency hearing for August 12, 2015.

On August 11, 2015, the day before the competency hearing, Virginia filed an addendum to the violation letter. In the addendum, Virginia listed additional instances between August 2014 and July 2015 in which Farabee had allegedly violated his probation terms by "failing to keep the peace, be of good behavior, and obey all laws" while he was committed at Central State Hospital. J.A. 550–53. These instances included the following: (1) on August 15, 2014, Farabee assaulted "a human rights advocate who was visiting"; (2) on October 23, 2014, he "assaulted [a] Central State Hospital worker"; (3) on March 30, 2015, he "destroyed property [eyeglasses] belonging to [a nurse]"; and (4) on July 20, 2015, while being transported to court in a sheriff's deputy's vehicle, he "urinated and evacuated his bowels" in the vehicle. *Id.*

According to Farabee, before and during the competency hearing, Tomlin failed to adequately represent him in numerous ways. He wrote, in relevant parts, as follows:

> Ms. Tomlin lied to this Court on August 12th, 2015 and stated that the defendant refused to answer her telephone calls. This Court found the defendant to be competent based on these false allegations when in fact it was Ms. Tomlin that has been refusing to answer the defendants [sic] phone calls and faxes from both him, his family and friends on multiple occasions. Ms. Tomlin adamantly refused to answer or return phone calls or to meet with or discuss a defense on behalf of the defendant; nor will she request or seek to obtain his hospital records that refutes [sic] the commonwealth's clinician, Dr. Nelson's statements . . .

7

J.A. 554. In addition, Tomlin allegedly presented no defense against Dr. Nelson's evaluation at the competency hearing. Tomlin also did not request previous medical records, call Dr. McWilliams (Farabee's previous clinical psychologist) to testify in support of Farabee, or point out that VDOC had repeatedly obtained court approval for forced medication based on the belief that Farabee was incapable of either making informed decisions or giving informed consent.

Most tellingly, Farabee moved to substitute Tomlin for another counsel and explained that the attorney-client relationship had deteriorated beyond repair. The court denied the motion to substitute counsel and, based in part on Dr. Nelson's evaluation, found Farabee competent to answer to the charges against him. With Farabee's competency determined, the court scheduled a final revocation hearing for October 14, 2015.

On October 13, 2015, the day before the final revocation hearing, Virginia informed the court that it sought to amend the violation letter a second time. In that amended letter, Virginia alleged for the first time that Farabee's 2003 conviction for malicious wounding violated the terms of his probation imposed in 2000. After receiving Virginia's notice, the court rescheduled the final revocation hearing for November 20, 2015. While Virginia notified the court of the second amended violation letter, Farabee was unaware of it and expected to defend only his conduct at Central State Hospital between 2014 and 2015. According to Farabee, he was caught unaware as Tomlin had not returned any of his calls, visited him in person, or sent him any legal mail in the weeks leading up to the final revocation hearing.

8

Even at the final revocation hearing, the relationship between Farabee and Tomlin continued to break down. For instance, while the Central State Hospital nurse testified about how Farabee had recently broken a pair of her glasses, Tomlin interrupted to explain that Farabee was "very upset" and requested a continuance. J.A. 199. Farabee explained the reason he was "upset" was because Tomlin was sick, did not "have a voice," and was "not functioning at [her] best." *Id.* The court, though recognizing that Tomlin "ha[d] limited ability to question witnesses and . . . present argument," nevertheless concluded it had "received a conviction record . . . [and] ha[d] before it enough evidence to find [Farabee] guilty . . . absent [Tomlin] being able to show in some way that that court record is not accurate." *See* J.A. 200. Tomlin, when asked if she had any evidence to present, said no.

Instead, Tomlin stated she believed Farabee was in violation of his good behavior based solely on the conviction stated in Virginia's second amended violation letter. With no evidence presented or witnesses called, Tomlin asked for leniency. She explained to the court that Farabee was "still very much mentally impaired . . . [and] under [a civil] commitment" order and would be better off in the "mental health system." J.A. 204.

The court then invited Farabee to speak. Farabee first reiterated his inadequate defense, noting that witnesses were not called to refute Virginia's negative portrayal of him. He then argued Virginia was improperly seeking to revoke his probation based on an incident that occurred in 2002 and a conviction for which he had already served 10 years in prison. He also contended he had a justifiable defense to present—that the altercation involved a fight with another inmate who carried a knife and Farabee was acting in self-

9

defense—if he were allowed to do so.  Farabee further claimed that, even without a new prison sentence, he would not be released from custodial control since the prior civil commitment order was still in effect.  He finally requested the court to "look at both sides of what is going on here . . . [and] have compassion."  J.A. 209.

After reviewing the record and listening to the arguments, the court determined Farabee had violated his probation terms.  The court acknowledged there may have been a justifiable defense available to Farabee, such as the knife found on the inmate, but the fact that Farabee eloquently presented himself and his arguments undermined his claim for incompetence and leniency.  The court then revoked all of the previously suspended sentence—16 years and eight months[5]—for the malicious wounding charges, resuspended 10 years, and ordered that Farabee serve another six years and eight months in prison.  Farabee timely appealed this revocation order to the Virginia Court of Appeals.

On April 15, 2016, Tomlin filed an *Anders* brief on appeal—incorrectly referencing the name of another client several times—and petitioned to withdraw her representation of Farabee.  On his own, Farabee filed a brief and made several unsuccessful arguments.  First, he argued that Virginia violated due process by (1) revoking his suspended sentence when he was subject to a civil commitment order and VDOC was unable to provide him with adequate treatment, (2) failing to notify him of its intention to proceed on the 2003 conviction prior to the final revocation hearing, and (3) relying on the stale 2003 conviction in violation of his speedy trial rights.  Virginia's Court of Appeals, however, declined to

---

[5] As previously noted, Farabee was initially sentenced to 20 years in prison March 2000, and all but three years and 4 months of his sentence were suspended.

10

resolve these claims because the trial court had not first ruled on them. Second, Farabee claimed ineffective assistance of counsel by Tomlin. Virginia's Court of Appeals also declined to consider this issue because ineffective assistance of counsel claims are not cognizable on direct appeal.

Accordingly, on September 29, 2016, the Virginia Court of Appeals denied Tomlin's petition and rejected all of the arguments raised by Farabee. He did not seek review in the Virginia Supreme Court.

## C.

Farabee instead filed two habeas petitions in state court. The first was filed in May 2015, prior to the final revocation hearing, and the second in November 2016, following the denial of his direct appeal. In these two habeas petitions, Farabee raised many of the same claims that had been raised and rejected in his direct appeal. The Virginia Supreme Court denied the two petitions in December 2016 and July 2017, respectively.

As to Farabee's due process rights claims, the Virginia Supreme Court concluded they were "not cognizable in a petition for a writ of habeas corpus . . . [since] the issue was raised at trial and rejected on direct appeal" or were improperly raised since a habeas petition "may not be employed as a substitute for an appeal." J.A. 127, 175–78 (citations omitted). Concerning Farabee's ineffective assistance of counsel claim, the Virginia Supreme Court found that Farabee had no constitutional right to counsel in his revocation proceedings since "the record, including the transcript of the revocation proceeding, demonstrate[d] that there [was] no question [Farabee] violated his probation by incurring

11

a new conviction, and [he] ha[d] not identified any mitigating circumstances or complex reasons why revocation was inappropriate." J.A. 128, 180 (citation omitted).

As previously mentioned, Farabee then filed three federal habeas petitions in the district court, all of which the magistrate judge recommended dismissal. First, on February 12, 2018, the magistrate judge recommended dismissal of the § 2441 petition. The magistrate judge explained that many of Farabee's claims—including ineffective assistance of counsel, lack of notice of the charges underlying the revocation, and violation of his speedy trial rights—challenged the lawfulness of his convictions instead of their execution and were therefore non-cognizable in a § 2241 petition. The magistrate judge also deemed procedurally barred Farabee's claim that his incarceration violated his due process rights given his prior civil commitment order, explaining that the claim should have been brought on direct appeal. In May 2018, the district court adopted the magistrate judge's recommendation and dismissed Farabee's § 2241 petition with prejudice.

Second, on July 3, 2018, the magistrate judge recommended dismissal of Farabee's first § 2254 petition. As to the due process claims raised, the magistrate judge found them procedurally defaulted or without merit for the same reasons cited in the prior report and recommendation (*i.e.*, Farabee received adequate notice and may be incarcerated notwithstanding a civil commitment order). Regarding the ineffective assistance of counsel claim, the magistrate judge concluded that the state court's reasoning was sound, that is, Farabee was not entitled to counsel during his revocation proceedings. In September 2018, the district court adopted the magistrate judge's recommendation and, like Farabee's § 2241 petition, dismissed the first § 2254 petition with prejudice.

12

Finally, on July 6, 2018, the magistrate judge recommended dismissal of Farabee's second § 2254 petition. Farabee had also filed the second § 2254 petition in 2016, nearly two years before the district court dismissed his first § 2254 petition on the merits. The magistrate judge found that claims asserted in the second § 2254 petition had been previously asserted in the first § 2254 petition, so the second petition was a successive petition over which the district court lacked jurisdiction to adjudicate. In September 2018, the district court adopted the magistrate judge's recommendation and, like the first § 2254 petition, dismissed the second § 2254 petition with prejudice.

Farabee timely appealed all three dismissals. We consolidated the three appeals, appointed counsel, and granted a certificate of appealability on the following four questions:

> (1) Whether Farabee had a due process right to counsel in his revocation proceedings;
>
> (2) [W]hether [Farabee's] due process rights were violated by inadequate notice of the basis for the revocation, by the state's undue delay in seeking revocation based on the violation, or by his incarceration in prison when he was previously adjudged not guilty by reason of insanity and civilly committed to receive treatment in a mental health hospital;
>
> (3) [W]hether [Farabee] can show cause and prejudice or a miscarriage of justice to excuse his procedural default of any potentially meritorious claims; and
>
> (4) [W]hether the district court erred in dismissing [Farabee's] second § 2254 petition as successive when it was filed before his first § 2254 petition was adjudicated.

13

II.

We review *de novo* a district court's dismissal of a habeas petition. *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 523 (4th Cir. 2016). Where, as here, a district court dismisses a petition without an evidentiary hearing or discovery,[6] we "evaluate its underlying allegations pursuant to the principles of Federal Rule of Civil Procedure 12(b)(6)." *Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009).

III.

Because the fourth question presented in the certificate of appealability is a threshold issue, we consider it first. Both parties properly recognize on the fourth question presented that the district court erred in dismissing Farabee's second § 2254 petition as second or successive when that petition was filed before his first § 2254 petition had been adjudicated. According to Farabee, his second § 2254 petition was filed two years before the district court had ruled on his first § 2254 petition, so the district court should have construed the second petition as a motion to amend. Because of its failure to do so, Farabee continues, the district court never considered his notice and undue delay claims or several

---

[6] Notably, under 28 U.S.C. § 2254(d), "the availability of federal habeas relief is limited with respect to claims previously adjudicated on the merits in state-court proceedings." *Harrington v. Richter*, 562 U.S. 86, 92 (2011) (quotation marks omitted). If the state court adjudicated the claim on the merits, we may grant the writ only if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). But if the state court did not adjudicate the claim on the merits, as here, we review *de novo* the claim. *Winston v. Pearson*, 683 F.3d 489, 496 (4th Cir. 2012).

14

allegations of ineffective assistance. Acknowledging the error, Appellees[7] insist that the appropriate course of action is for us to immediately remand this consolidated appeal to permit the district court to address Farabee's unadjudicated claims and avoid piecemeal appeals.[8] We disagree.

The Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). Indeed, our sister circuits uniformly agree that a § 2254 petition, like Farabee's second petition, should not be deemed second or successive unless an earlier-filed petition has been adjudicated on the merits. *See, e.g.*, *Goodrum v. Busby*, 824 F.3d 1188, 1194 (9th Cir. 2016); *United States v. Sellner*, 773 F.3d 927, 931–32 (8th Cir. 2014); *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002). But here, since the district court did not adjudicate on the merits certain issues presented in Farabee's first § 2254 petition prior to the filing of his second § 2254, the second petition cannot be considered successive. Rather, the consolidated appeal now presents several other issues ripe for review, such as whether Farabee had a right to counsel in his revocation proceedings, whether he sufficiently alleged a substantive due process violation, and whether the procedural default of any meritorious claim may be excused.

---

[7] For purposes of this opinion, Appellees refer to Harold W. Clarke, the Director of VDOC, and Jack Barber, then-Commissioner of the Virginia's Department of Behavioral Health and Development Services.

[8] Indeed, Appellees even filed a motion to remand and vacate, which raises many of the same arguments they raised in their reply brief.

We now turn to the remaining three questions in the certificate of appealability.

A.

We first consider the question of Farabee's right to counsel in his revocation proceedings. He contends he had substantial affirmative defenses that could have been raised in response to Appellees' asserted violations—as well as Dr. Nelson's competency evaluation and the prospect of revocation—but these defenses were complex and difficult to develop without the assistance of counsel. Farabee also points out he had mitigation defenses, such as the fact that he had been heavily medicated on psychotropic drugs when he originally pled guilty to the two counts of malicious wounding in 2000. He emphasizes that he is no ordinary probationer, but instead is a man with a seventh-grade education who suffers from severe mental illness who is unable to adequately present his case from behind the walls of the psychiatric hospital.

Appellees, to the contrary, insist that Farabee had no due process rights to counsel in his revocation proceedings. That is so, Appellees contend, for two reasons: first, Farabee unquestionably violated the probation terms on the 2000 conviction by incurring a new conviction in 2003, and second, he identified no specific mitigating circumstances or complex reasons why revocation was inappropriate. Appellees further reason that to the extent he now believes he has affirmative or mitigation defenses, these points are irrelevant because Farabee cannot relitigate his prior conviction. Any evidence that "could have (or should have) been presented in [his] state habeas petition . . . was not." Response Br. at 38–43. We disagree.

16

We turn to the Supreme Court's seminal decision in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), for guidance. There, the Court recognized that a probationer's guaranteed rights, such as due process, might "depend on the use of skills which the probationer . . . is unlikely to possess." *Id.* at 786. For instance, an "unskilled or uneducated probationer" may struggle to "present[] his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence." *Id.* at 787. "[F]undamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers" based upon that probationer's specific circumstances. *Id.* at 790 (noting the facts and circumstances of revocation proceedings are susceptible to "almost infinite variation"). But, "[p]resumptively, it may be said that counsel should be provided in cases where:

> [A]fter being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Id.*

Here, we find that Farabee has satisfied the criteria articulated in *Gagnon* to entitle him to counsel in the revocation proceedings. Appellees vastly devalue the difficulty and complexity of Farabee's revocation and the potential importance of the evidence he sought to present. If, for example, Farabee were able to show that the conduct underlying his

17

conviction from 2000 was "involuntary" due to him being heavily medicated with psychotropic drugs, or if he acted in self-defense, then there would be reason to believe that revocation of his suspended sentence was unwarranted. Revocation might also not be appropriate if Farabee were inadequately represented by counsel at trial in 2002. But it is no easy task—especially for a probationer with Farabee's education, lack of legal skill and training, and mental condition—to develop the necessary evidence and testimony regarding his mental state in 2000. To put it more plainly, there are numerous facts relevant to Farabee's commitment that should have been—but were not—fully developed. *See Black v. Romano*, 471 U.S. 606, 614 (1985) (concluding that due process "assure[s] the probationer an opportunity to present mitigating evidence and to argue that alternatives to imprisonment are appropriate").

Moreover, contrary to Appellees' suggestion, Farabee's right to counsel at his revocation proceedings is not dependent on his likelihood of success on the merits. Rather, the relevant inquiry is whether he required assistance of counsel because he raised *colorable* claims that were "complex or otherwise difficult to develop or present," which we conclude he did. *See Gagnon*, 411 U.S. at 790. As Farabee explains, he wanted, but was unable, to "present evidence of his mental state and medication regime from 2000 to 2002 to demonstrate his diminished capacity"; "call an inmate and an investigator who could testify that the inmate he allegedly assaulted in 2002 had brandished a weapon"; "put on evidence that he had been abused and neglected at Central State Hospital"; "put on testimony from a clinical psychologist . . . to explain how Virginia officials had failed to

18

treat his mental illness properly"; and explain "why he would still be better off in a hospital setting." Reply Br. at 7–8.

We simply find that Farabee need not show likelihood of success on the merits, regardless of whether the court could or should have revoked his probation and what punishment it could or should have instead imposed. *See United States v. Dodson*, 25 F.3d 385, 389 (6th Cir. 1994) ("[W]e conclude that defendant was entitled to representation by counsel at the final revocation hearing because there are substantial reasons which justify or mitigate his probation violations and these reasons are sufficiently complex or difficult to develop or present."). Appellees' position fails to recognize that a probationer's constitutional right to counsel, as here, necessarily includes the constitutional right to have counsel perform her duties on behalf of her client, as Farabee contends was not the case.

Accordingly, we conclude Farabee had a due process right to counsel in his revocation proceedings.

### B.

Next, we turn to whether Farabee adequately alleged his due process rights were violated by (1) inadequate notice of the basis for revoking his suspended sentence, (2) undue delay in seeking revocation based on the violation, or (3) incarceration when he was previously adjudged not guilty by reason of insanity and civilly committed to receive treatment in a mental health hospital. We address each claim in turn.

### 1.

First, on inadequate notice, Farabee states that when he appeared at the revocation proceeding on November 20, 2015, he expected to defend his conduct at Central State

19

Hospital between 2014 and 2015. Instead, he was confronted with two decade-old malicious wounding charges from 2003. Though Virginia had included these charges in a second amended violation letter, Farabee's counsel neither discussed them with him nor prepared *any* defense. Worse, because of Virginia's failure to inform him of the second amended violation letter, Farabee claims he could not have prepared to defend his actions. Appellees, in response, contend that they did precisely what was required of them by providing notice of the second amended violation letter to Farabee's counsel. We reject such a rigid understanding of due process rights.

Both parties appropriately recognize that a probationer, like Farabee, has a right to advance "written notice of the claimed violations of his probation." *See Black v. Romano*, 471 U.S. 606, 612 (1985). As the Supreme Court determined, "[p]art of the function of the notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974); *see also D'Amato v. U.S. Parole Comm'n*, 837 F.2d 72, 77 (2d Cir. 1988) (recognizing that, where the state fails to provide advance notice, a probationer has no "opportunity" to prepare "to contest or explain matters relating to the charged offense").

Certainly, a client is usually bound by counsel's actions since counsel acts as the client's agent. *See Maples v. Thomas*, 565 U.S. 266, 281 (2012). However, a "markedly different situation is presented . . . when an attorney abandons his client." *Id.* at 281. In such a situation, as Farabee asserts here, "an attorney no longer acts . . . as the client's representative . . . [and] [h]is acts therefore cannot fairly be attributed to the client." *Id.* (internal quotation marks and brackets omitted).

20

Applying these principles, we conclude Farabee has sufficiently alleged that Virginia violated his due process rights by seeking to revoke his probation without providing adequate notice. As alleged, Farabee did not receive actual notice of the charges against him due to breakdown in communication with his counsel and was misled into thinking he would be defending other alleged misconduct. His counsel, Tomlin, had not returned any of his calls, visited him in person, or sent him any legal mail in the weeks leading up to the revocation proceeding. Indeed, by the time Farabee appeared at the revocation proceeding on November 20, 2015, he had twice asked for a counsel substitution. The combination of a surprise second amended violation letter and Tomlin's near-abandonment not only "provided something worse than no notice at all" to Farabee, but also "deceived [him] into believing he was being charged with another offense, unrelated to the one on which the . . . court ultimately settled." *United States v. Havier*, 155 F.3d 1090, 1093 (9th Cir. 1998).

To be sure, it is not our role "to speculate what action [the state court] would have taken if proper notice had been furnished with respect to [second amended violation letter] and if [Farabee] had had the opportunity to prepare and present mitigating evidence in rebuttal." *See United States v. Taylor*, 540 F.2d 1156, 1160 (2d Cir. 1976). We simply find due process guarantees Farabee an advanced written notice of the claimed violations of his probation, which he did not receive. *Gagnon*, 411 U.S. at 786. Thus, we conclude Farabee has adequately alleged this claim, and the district court erred in dismissing it.

21

2.

Second, we turn to Farabee's claim that Virginia's unreasonable delay in prosecuting his 2003 charges as part of the revocation proceedings in 2015 violates his due process rights. According to him, Virginia does not need to seek to revoke his probation immediately upon learning of the alleged charges. But doing so after more than a decade is unreasonable,[9] since it undermines Farabee's ability to proffer affirmative or mitigating evidence.

In response, Appellees contend Farabee's undue delay claim fails since he cannot show unreasonableness or prejudice. According to Appellees, Virginia's actions in 2015 in seeking to revoke Farabee's probation from 2003 were entirely within the bounds of the discretion afforded to probation officers as to when to initiate revocation proceedings. Regardless, Appellees continue, any delay in seeking revocation does not prejudice Farabee where the violation was established by a prior criminal conviction. We disagree.

Whether a state's delay in seeking revocation of a suspended sentence offends due process is a function of reasonableness and prejudice. *See Gaddy v. Michael*, 519 F.2d

---

[9] Farabee reasons that delay is "a tactic the state can wield arbitrarily or to its advantage" and often "works to the probationer's detriment, as time erodes defenses or threatens ever greater disruption to his life." Opening Br. at 45. He suggests that Virginia "simply found itself in a bind in fall 2015," because since 1999, it has repeatedly maintained that Farabee must be confined in a psychiatric or correctional facility but "still had not learned how to manage his illness effectively." *Id.* So, having created a problem it had grown "tired of trying to solve," Virginia opted to incarcerate Farabee. *Id.* We recite Farabee's proffered explanation only for context and do not purport to make factual determinations, especially where there was no opportunity for an evidentiary hearing or discovery in the district court. Indeed, our resolution of the appeals does not depend on the veracity of either party's explanation.

22

669, 673 (4th Cir. 1975) (listing potential reasonableness and prejudice factors). And whether a state "acted within a reasonable time . . . depends upon all the circumstances of the particular case." *Id.*; *see United States v. Santana*, 526 F.3d 1257, 1260 (9th Cir. 2008) (concluding reasonableness is a "balancing judgment in which the length of delay is considered in connection with the reasons for [it]"). After an unreasonable time, violations of which the state is aware become stale or are waived as a basis for revoking probation. *See United States v. Mendoza*, 530 F.3d 758, 765 (9th Cir. 2008) (finding prejudice due to the government's eight-year delay between arrest and indictment).

Here, we conclude that Farabee has alleged sufficient facts to show an unreasonable delay. As previously discussed, the altercation prompting the malicious wounding charges in question occurred in March 2002, and Farabee was convicted in October 2003. At the time of the revocation proceeding in 2015, Virginia had been aware of Farabee's conviction for over a decade. We have little trouble concluding that such a delay is unreasonable. Indeed, numerous courts have concluded that delays significantly shorter than the delay presented here violate a probationer's due process rights. *See, e.g.*, *United States v. Tyler*, 605 F.2d 851, 852–53 (5th Cir. 1979) (one to two years); *Hamilton*, 708 F.2d at 1415 ("Three years is beyond that point [of reasonability] under the circumstances of this case.").

We also find that Farabee was prejudiced by the unreasonable delay of over a decade. The length of time frustrated Farabee's ability to obtain relevant evidence, such as testimony from witnesses, relevant evidence related to the 2002 conviction, and important medical records. He never had that opportunity and was unable to mount any, let alone an adequate, defense. Such an unreasonable delay "may frustrate a defendant's

23

due process rights if it undermines his ability to contest the issue underlying the violation or *to proffer mitigating evidence*," as here. *United States v. Loiseau*, 429 F. App'x 210, 211 (4th Cir. 2011) (emphasis added).

3.

Third, we turn to Farabee's claim that the revocation of his probation violated his substantive due process rights. Specifically, he contends that rather than providing him the necessary medical care long recommended by treating psychologists and psychiatrists, Virginia instead used a stale violation to re-incarcerate him into conditions that further erode his physical and mental health. Virginia's revocation, he continues, violated his substantive due process rights because "he is in prison where officials insist on treating his illness with medication and his behavior with solitary confinement—modalities that do nothing for his illness and only aggravate his instincts for self-harm" and harm to others. Opening Br. at 50.

Appellees, contending otherwise, maintain that Farabee may not challenge the conditions of confinement because they were based on "sound professional judgment" given his behavior and the circumstances. Instead of filing a habeas petition, he should have brought an action under 42 U.S.C. § 1983. We do not share the same assessment.

Due process affords Farabee "a right to adequate food, shelter, clothing, and *medical care* . . . [and to] safety and freedom from bodily restraint." *Youngberg v. Romeo*, 457 U.S. 307, 315–18 (1982) (emphasis added). Neither involuntary commitment nor "lawful confinement, even for penal purposes," terminate these rights. *Id.* at 315; *see also Thomas S. v. Morrow*, 781 F.2d 367, 374 (4th Cir. 1986) (extending these rights to those sentenced

24

to non-institutional specialized adult foster care and group home facilities).  Under certain circumstances, a failure to meet these rights "may comprise a due process . . . violation because the state-imposed circumstance of confinement prevents such individuals from helping themselves."  *Davis v. Rennie*, 264 F.3d 86, 98 (1st Cir. 2001).

Under the circumstances here, Virginia, by committing Farabee, undertook the responsibility to provide him with adequate medical care but failed to do so, instead opting to incarcerate and reincarcerate him for the past two decades.  Farabee has sufficiently alleged that state officials long denied him the one treatment—dialectical behavior therapy ("DBT")—recommended by professional medical personnel.  Indeed, in a separate appeal, *Yaratha*, 801 F. App'x at 100, another panel recognized that "it was undisputed that Farabee had asked for but never received DBT" despite the recommendations of two psychologists and a psychiatrist.

We, of course, recognize that appeal was a § 1983 action against Drs. Sridhar Yaratha and Rebecca Vauter, Farabee's treating doctors at Central State Hospital.  We also recognize the panel in *Yaratha* was presented with a post-trial factual record, so that appeal involved a different standard of review.  The panel found that "[a]bsent a finding by the district court that Yaratha lied on the witness stand about why he withheld DBT, there's simply no evidence that his decision—while perhaps misguided—was a sham."  *Id.* at 105.  So, while the panel in *Yaratha* could not conclude that the evidence presented supported a finding that that Dr. Yaratha breached the *Youngberg* standard (*i.e.*, Dr. Yaratha should not have withheld DBT), the decision has little implication on Farabee's claims here.

25

Moreover, contrary to Appellees' assertion, we find it unnecessary to require Farabee, then proceeding pro se, to navigate the labyrinth of habeas law and understand that he might not be able to challenge his conditions of confinement through a habeas petition. Indeed, this is an unsettled question of law among our sister circuits. *Compare, e.g.*, *Nettles v. Grounds*, 830 F.3d 922, 933–34 (9th Cir. 2016) (adopting the view that conditions-of-confinement claims fall outside "the core of habeas corpus" and must be brought in a civil rights claim); *Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014) (same); *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012) (same), *with, e.g.*, *Aamer v. Obama*, 742 F.3d 1023, 1036 (D.C. Cir. 2014) (adopting the view that prisoners can challenge the form of detention under habeas); *Jiminian v. Nash*, 245 F.3d 144, 146–47 (2d Cir. 2001) (same). We have yet to address this issue in a published opinion. Nor must we now since Farabee's claim raises a right we have recognized in the past.

We have previously found that federal habeas jurisdiction exists to review "the complaint of a federal prisoner who is challenging not the validity of his original conviction, but the imposition of segregated confinement without elementary procedural due process and without just cause." *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975); *see Varela v. Whalen*, 946 F.2d 888, 888 (4th Cir. 1991) (table) ("Varela's first two claims, alleging that he was convicted of disciplinary infractions without just cause and placed in segregation, raise a *McNair* issue. . . . This allegation is sufficient to invoke jurisdiction under § 2241."). Farabee raises, at least in part, this precise issue by illustrating

26

that prison officials have used medication and solitary confinement to treat his mental illness and behavior, which has only worsened his physical and mental health.[10]

Accordingly, we conclude that Farabee has adequately stated a substantive due process claim, and it was error for the district court to dismiss it.

## C.

We finally turn to whether the procedural default doctrine bars review of Farabee's claims. He contends that he can show cause and prejudice necessary to excuse any procedural default and that failing to excuse any procedural default would result in a fundamental miscarriage of justice. We agree.

A court may excuse a "procedural default for cause and prejudice, or if a fundamental miscarriage of justice would result from failure to do so." *Mueller v. Angelone*, 181 F.3d 557, 584 (4th Cir. 1999); *see Harris v. Reed*, 489 U.S. 255, 262 (1989) (excusing procedural default when habeas petitioner can show cause and prejudice or if failure to consider the claim would result in a fundamental miscarriage of justice). "The existence of cause for procedural default 'ordinarily turn[s] on whether [a] petitioner can show that some objective factor external to the defense' impeded [his] efforts to comply

---

[10] Notably, to Farabee's credit, we have also recognized that "even when the Court concludes that a claim is not cognizable under § 2241, the Court can sua sponte consider the merits as a civil rights claim in some circumstances." *Wilborn v. Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (citing *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971) (per curiam) (recognizing that courts may exercise discretion to construe a habeas petition attacking conditions of confinement as a civil rights claim)). This is logical since, in a conditions of confinement challenge, a petitioner inevitably contends that "some aspect of his confinement has deprived him of a right to which he is entitled while in custody." *Aamer*, 742 F.3d at 1036 (noting the basic principle that "[h]abeas is at its core a remedy for unlawful executive detention") (citation omitted).

27

with the State's procedural rule." *Mueller*, 181 F.3d at 585 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

For many of the reasons already discussed—such as inadequate notice, undue delay, and the potential viability of mitigation evidence—Farabee has established enough facts to show prejudice in order to excuse any procedural default. Moreover, prejudice is presumed when, as alleged here, Farabee's counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *See United States v. Cronic*, 466 U.S. 648, 659 (1984); *see also Maples*, 565 U.S. at 282–83 (holding that "counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests" was tantamount to abandonment and enough to "lift the state procedural bar to his federal petition") (citation omitted). Even absent cause and prejudice, we conclude a fundamental miscarriage of justice would result if Farabee were not allowed to move forward in challenging Virginia's revocation of his suspended sentence. *See Schlup v. Delo*, 513 U.S. 298, 317 (1995) (concluding that "a review of the merits of the constitutional claims" is justified if a court was "merely convinced that . . . new facts raised sufficient doubt about [a petitioner's] guilt to undermine confidence in the result").

Thus, we conclude Farabee has plausibly alleged enough facts to excuse any procedural default.

IV.

For the foregoing reasons, we vacate the district court's dismissals and remand for proceedings consistent with this opinion. On remand, the district court is instructed to

28

consider—which may include an evidentiary hearing and discovery—the merits of Farabee's due process and ineffective assistance of counsel claims.

*VACATED AND REMANDED*