**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-7220**

---

BRIAN DAMON FARABEE,

       Plaintiff - Appellant,

    v.

DR. ROBERT GARDELLA, Psychiatrist; CHRISTY F MCFARLAND, Psychologist; DANIEL HERR, Deputy Assistant Commissioner,

       Defendants - Appellees.

---

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Michael F. Urbanski, Senior District Judge.  (7:16-cv-00326-MFU-JCH)

---

Argued:  October 29, 2024                       Decided:  March 11, 2025

---

Before GREGORY and HARRIS, Circuit Judges, Louise W. FLANAGAN, United States District Judge for the Eastern District of North Carolina, sitting by designation.

---

Reversed and vacated by published opinion.  Judge Gregory wrote the opinion, in which Judge Harris and Judge Flanagan joined.  Judge Harris wrote a concurring opinion.

---

**ARGUED:**  Jordan L. Moran, GOODWIN PROCTER, LLP, Washington, D.C., for Appellant.  Brendan Chestnut, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.  **ON BRIEF:**  James Nikraftar, Santa Monica, California, Samarth Prashant Bhat, New York, New York, Andrew Kim, GOODWIN PROCTER, LLP, Washington, D.C., for Appellant.  Jason S. Miyares, Attorney General, Allyson K. Tysinger, Senior Assistant Attorney General, Karen A.D. Taylor, Senior Assistant Attorney General, Andrew N. Ferguson, Solicitor General, Erika L. Maley, Principal Deputy Attorney General, M. Jordan Minot, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

GREGORY, Circuit Judge:

Brian Farabee suffers from borderline personality disorder and has spent all of his adult life hospitalized for treatment or imprisoned for crimes committed while he was hospitalized. Farabee filed the underlying action pursuant to 42 U.S.C. § 1983 against Dr. Robert Gardella, a staff psychiatrist at Western State Hospital; Dr. Christy McFarland, a staff psychologist at Western State Hospital; and Daniel Herr, a Deputy Assistant Commissioner of Behavioral Health Services for the Virginia Department of Behavioral Health and Development Services (collectively, "Appellees"). Farabee alleges that Appellees violated his right to Due Process, denied him clinically recommended treatment, unnecessarily restrained and isolated him in violation of his right to Due Process; denied him the right to free association; forcibly medicated him; seized his person; and discriminated against him in violation of his rights under the United States Constitution and the Americans with Disabilities Act ("ADA").

Without first providing Farabee with an opportunity to conduct discovery or ensuring that he was properly informed of Federal Rule of Civil Procedure Rule 56's ("Rule 56") requirements, the district court granted Appellees' summary judgment on all of his claims on the grounds that the record was devoid of a material dispute of fact and that Appellees were entitled to summary judgment. We conclude that the district court erred in granting pre-discovery summary judgment on Farabee's claims. Accordingly, we vacate the district court's summary judgment decisions without reaching the merits and remand this case for further proceedings.

2

I.

Brian Farabee has suffered from and been periodically hospitalized for severe mental illness since childhood. *Farabee v. Clarke*, 967 F.3d 380, 384 (4th Cir. 2020). In 1999, while a patient in Virginia's Eastern State Hospital, Farabee attempted to take his own life by setting his bed sheets on fire after learning of a family member's death. *Id*.; *see also* J.A. 152. He was charged with arson but ultimately deemed not guilty by reason of insanity ("NGRI") due in part to an evaluation by clinical psychologist, Dr. Kevin McWilliams, who diagnosed Farabee with borderline personality disorder. *Clarke*, 967 F.3d at 384; J.A. 457. Other doctors who have treated Farabee also offered the same diagnosis. J.A. 458.

Dr. McWilliams warned that "long-term placement in institutional settings virtually never prove useful for treatment of borderline personality disorder" and instead can cause the patient's behavior to worsen. In Dr. McWilliams's view, Farabee clinically required "much more intensive and sophisticated therapy for childhood abuse/neglect issues" than he was receiving. He also noted that medication would be ineffective in treating Farabee, stating "that pharmacological interventions have no proven utility for this disorder," except that "a sleeping or sleepy patient is less likely to act-out." J.A. 168. He recommended "outpatient counseling" and other services in the Virginia Beach area, where Farabee's maternal grandparents lived and were willing to assist in his transition. *Id*. Additionally, he advised that "[h]ospital stays, when necessary due to self-mutilation, should be brief and not endure beyond one day." *Id.* According to Dr. McWilliams, hospitalizing or committing Farabee until he is "stable" could "result in a life sentence to a psychiatric hospital." *Farabee v. Yaratha*, 801 Fed. App'x 97, 99 (4th Cir. 2020).

3

Instead, Dr. McWilliams opined that "the right treatment for Farabee" was "dialectical behavior therapy ("DBT")," a treatment for borderline personality disorder that involves intense one-on-one discussion of past traumas and is administered by psychologists. *Id*. at *101.

Despite Dr. McWilliams's recommendation, Farabee was involuntarily committed to Central State Hospital ("CSH"), where he requested but never received DBT. *Id*. Shortly after his arrival at CSH, Farabee was charged with two counts of malicious wounding for his role in an altercation at the hospital. *Clarke*, 967 F.3d at 384. He pleaded guilty and was sentenced to 20 years in prison. *Id*. However, the judge suspended all but three years and four months of Farabee's sentence and placed him on supervised probation for 20 years. *Id*. While in prison, Farabee was again charged with malicious wounding, for an altercation with another inmate. *Id*. At sentencing, he asked the court to commit him, but the court "could not 'find any clear and convincing evidence that Farabee was mentally ill'" and sentenced him to 10 years in prison in addition to his initial sentence. *Id.* at 384, 386.

In 2012, after Farabee completed his criminal sentences, Farabee was recommitted to Central State Hospital ("CSH") where he was placed in the care of Dr. Sridhar Yaratha. *Clarke*, 967 F.3d at 384. Dr. Yaratha declined to treat Farabee with DBT despite Farabee's prior diagnosis and another doctor's reference to DBT as a basis for Farabee's recommitment. *Yaratha*, 801 Fed. App'x at *100. According to the record, Dr. Yaratha did not offer DBT to Farabee because (1) he believed the risks of DBT outweighed its benefits to Farabee, (2) Farabee had not demonstrated that he could cooperate with therapists during a DBT session, and (3) CSH did not have a psychologist on staff who

4

could offer DBT. *Id.* at *100-01. Farabee therefore did not receive DBT during the three years he spent at CSH following his recommitment. *Id.* In April 2015 (as the *Yaratha* litigation proceeded), Virginia state officials sought to have Farabee's probation revoked based on his involvement in another physical altercation at CSH. *Clarke*, 967 F.3d at 384–85; *see also Farabee v. Yaratha*, No. 14-00118 (EDVA). The district court's order directing service of Farabee's amended complaint in *Yaratha* was filed on September 8, 2015, and entered on September 9, 2015. *Farabee v. Yaratha*, No. 14-00118 (EDVA), Docket No. 24. According to Farabee, these actions laid the foundation for the alleged constitutional violations at issue in this case.

## II.[1]

On September 10, 2015, Appellee Herr, a Deputy Assistant Commissioner of Behavioral Health Services for the Virginia Department of Behavioral Health and Development Services transferred Farabee from Central State Hospital to Western State Hospital ("WSH"), and assigned him to Ward 2-Elm, a locked unit, generally reserved for criminally committed patients. Farabee alleges that Herr transferred him to Western State in retaliation for his lawsuit or "out of sheer animus." Herr maintains that he transferred Farabee to Western State Hospital to give Farabee "another opportunity to engage in meaningful treatment services in a less restrictive setting, a 'fresh start.'" J.A. 189–90.

---

[1] The facts in this section are drawn from the complaint, and the documents attached to the declarations submitted below.

According to Farabee, he experienced more isolation, bodily restraint, and restrictive living conditions at WSH than he experienced at CSH. Specifically, Farabee alleges that, without first exploring less-restrictive measures, Appellee Gardella entered a standing order permitting staff to place Farabee "by force" into an "Emergency Restraint Chair" ("ERC"). According to Farabee, he was placed in the ERC on September 12, 2015, and at other times, "with his wrists and legs and/or whole body strapped into the ERC." J.A. 144. Farabee alleges that he remained strapped to the ERC "for several hours at a time" and denied the opportunity to use the restroom, resulting in him being forced to urinate and defecate on himself. J.A. 54. He alleges that he was forced to sit in his excrement for hours. *See id.* Specifically, Farabee alleges that Appellees denied him clinically recommended treatment, unnecessarily restrained him, forcibly medicated him, and prohibited him from associating with others.

According to notes in documents Appellees submitted, the step-down plan was to work as follows:

> Pt was Informed that if he were to get aggressive, it was already decided to use a step down plan for him. Once he Is calm and redirectable he can be released from the ERC and put into 4 pt amb. restraints. After being calm and awake for 4 hours he would step down to 2 pt restraints. After he was calm and awake for 4 more hours he would step down to a 1 point restraint. After being calm and awake for 4 more hours then he would be released from the 1 pt restraint. Pt did not say anything after that was explained.

J.A. 260.

Farabee also alleges that WSH officials subjected him to chemical or pharmacological restraint by forcibly medicating him. Farabee alleges that Gardella issued another standing order that permitted staff to forcibly administer Thorazine (or

6

chlorpromazine) to Farabee on an as needed basis over his objection. Farabee was forcibly medicated with Thorazine after being placed in the ERC on September 12, 2015. Farabee suffered adverse reactions to the medication including bleeding, dry mouth, dizziness, tremors, akathisia (inability to sit still), nausea, impaired vision, hypertension, disorientation, and confusion. According to Farabee, neither his "Advance Directive" or "Legally Authorized Representatives" authorized the use of psychotropic or other drugs, and his medical record "noted an adverse reaction to Thorazine since 1996." Additionally, the Report that supported the NGRI verdict in Farabee's 1999 case explicitly recommended against using pharmacological intervention as such treatment was deemed ineffective for treating Farabee's disorder.

Farabee also alleges that Appellees subjected him to continuous isolation on Ward 2-Elm and prohibited him from leaving the unit to go outdoors, go to the gym or library, or engage in any of the off-the-unit activities. According to Farabee, Gardella's orders authorized the chemical restraint at times when he posed no danger to himself or others and was used to retaliate against him or control him. Farabee alleges that Appellees housed him in the criminal section of WSH instead of the civil section of the hospital, where "he could have received treatment and therapy for his mental health diagnoses" as clinically recommended.

Those allegations, in addition to the allegations outlined in Section I., serve as the basis for the underlying action against Dr. Robert Gardella, his treating physician at WSH; Dr. Christy F. McFarland, his treating psychologist; and Daniel Herr, Assistant Commissioner for Virginia Department of Behavioral Health and Developmental Services

7

("DBHDS"), who transferred Farabee to WSH.  Farabee asserts claims pursuant to 42 U.S.C. § 1983 for "discrimination on account of disability" under the Americans with Disabilities Act; and violations of his First Amendment right to association, and his Fourteenth Amendment rights to due process and to be free from unreasonable and unlawful seizures.

With respect to Farabee's Fourteenth Amendment claim, he alleges that he, "as an individual confined in a state psychiatric facility has constitutionally protected liberty interests to be free from unnecessary bodily restraints, to reasonable safety, and to treatment necessary to achieve these interests." J.A. 11.  Farabee further alleges "[s]aid acts and omissions by the defendants in both isolating plaintiff on a locked mental ward and exclusively using other various forms of restraints without attempting less restrictive options or implementing treatment that had been recommend[ed] for [Farabee] by a licensed professional as the bases of his initial confinement, did constitute a deviation from the accepted standards of clinical practice so as to not in fact be an exercise of professional judgment—which violated plaintiff's liberty interests under the due process clause of the 14th amendment of the U.S. Constitution." J.A. 11–12.

Appellees moved to dismiss all claims and attached declarations and other evidence to their motion.  J.A. 37–40.  Soon after, the district court provided the first of three *Roseboro*[2] notices to Farabee.  The *Roseboro* notice provided, in relevant part:

---

[2]  In *Roseboro v. Garrison*, this Court established the rule that district courts must provide pro se plaintiffs with "fair notice of the requirements of the summary judgment rule" before entering summary judgment against them.  528 F.2d 309, 310 (4th Cir. 1975). (Continued)

8

This case is before the Court pursuant to Defendant's Motion []. The Court will give Plaintiff twenty-one (21) days from the date of this Notice to submit any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding Defendant's evidence. Both sides are advised that if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure.

If Plaintiff does not respond to Defendant's pleadings, the Court will assume that Plaintiff has lost interest in the case, and/or that Plaintiff agrees with what the Defendant states in their responsive pleading(s). If Plaintiff wishes to continue with the case, it is necessary that Plaintiff respond in an appropriate fashion. Plaintiff may wish to respond with counter-affidavits or other additional evidence as outlined above. *However, if Plaintiff does not file some response within the twenty-one (21) day period, the Court may dismiss the case for failure to prosecute.*

J.A. 41 (emphasis in original); *see also* J.A. 315, 535.

Farabee opposed the motion and sought leave to amend his complaint. J.A. 43–169. Farabee also asked the district court to appoint counsel to assist him, citing the fact that he had only a "7th grade education"; "[did] not have access to a law library or the internet"; and "suffers from mental health problems[.]" J.A. 178. Farabee, as a pro se litigant, further stated "his version of events in the complaint is in sharp contrast to that of the defendants, and the outcome of the case largely depends on both expert witnesses and credibility" to which Farabee "has no training[.]" *Id*.

The district court denied Farabee's request for counsel, finding Farabee's "circumstances [were] not sufficiently exceptional to justify appointment of counsel[.]"

---

At minimum, the *Roseboro* notice, as it is commonly known, requires "that the plaintiff be advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him." *Id*.

9

J.A. 181.  The district court granted Farabee's motion to amend and as such, denied Appellees' motion to dismiss as moot.  In addition, in light of the mootness, the district court directed that Appellees "shall FILE a motion for summary judgment supported by affidavit(s) addressing the amended complaint within thirty days[.]"  J.A. 182.  No discovery had yet occurred.

Appellees subsequently moved for dismissal, or in the alternative, for summary judgment, J.A. 183, and the district court issued an identical second *Roseboro* notice. *Compare* J.A. 41 *with* J.A. 315.  Farabee opposed the motion, arguing, amongst other things, summary judgment would be premature because he had not yet had an opportunity to conduct discovery.  J.A. 336.  Farabee also again requested counsel due to "exceptional circumstances" which made gathering or authenticating evidence difficult as a pro se litigant. *Id*.

Farabee appealed the district court's decision, to which this Court remanded. Specifically, this Court explained, in a per curiam opinion, that the district court "failed to address Farabee's claim in Count I of the complaint that [Appellees] violated his due process rights under the Fourteenth Amendment by denying him clinically recommended mental health treatment" and as such, Farabee's "appeal is neither a final order nor an appealable interlocutory or collateral order."  J.A. 436.  Accordingly, this Court dismissed the appeal for lack of jurisdiction, and remanded to the district court for consideration of the unresolved claim. *Id*.

On remand, the district court directed Appellees to file "a supplemental brief or motion, . . . addressing the remanded claim."  J.A. 442.  Appellees filed a supplemental

10

motion for summary judgment, J.A. 443, and the district court issued an identical third Roseboro notice, *compare* J.A. 535 *with* J.A. 41, 315.  Farabee opposed Appellees' motion for summary judgment, J.A. 537–54, and filed a "motion for recruitment of counsel," again requesting counsel and assistance with conducting discovery.  J.A. 555.  Soon after, Farabee filed an additional "motion for recruitment of counsel," once more requesting counsel and assistance with discovery, stating he "would be prejudiced without assistance of counsel to assist him in performing tasks that normally attend litigation, or to produce documents in this case that could further undermine the credibility of the named defendants and corroborate [Farabee's] case."  J.A. 537–54.

The district court denied Farabee's request for counsel, stating Farabee appears to "reflect[] an ability to communicate with the court and present his claims and arguments." J.A. 563.  The district court subsequently granted Appellees' supplemental motion for summary judgment.  J.A. 564–77.  Farabee appeals the district court's order.

### III.

This Court reviews a district court's denial of a request for additional time for discovery for abuse of discretion.  *Pledger v. Lynch*, 5 F.4th 511, 524 (4th. Cir. 2021). Under that standard, we review the court's legal conclusions de novo, and its factual findings for clear error.  *Moses Enterprises, LLC v. Lexington Ins. Co.*, 66 F.4th 523, 526 (4th Cir. 2023).

Under Federal Rule of Civil Procedure 56(d) ("Rule 56(d)"), where a nonmovant shows by affidavit or declaration that "for specified reasons, it cannot present facts

11

essential to justify its opposition" to a motion for summary judgment, a district court may deny or defer consideration of the motion, allow time for the nonmovant to take discovery before assessing the motion, or issue any other order it deems appropriate. Fed. R. Civ. P. 56(d). Rule 56(d) therefore permits a district court to extend the discovery period after a party moves for summary judgment where the court is aware that additional discovery is necessary. *Id.*

Relief under Rule 56(d) is therefore "broadly favored" in this Circuit and should be "liberally granted." *Pledger*, 5 F.4th at 526 (internal quotation marks omitted). That practice is consistent with the Supreme Court's instruction that summary judgment motions should only be granted "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Consistent with that instruction, this Court has cautioned that district courts should not consider summary judgment motions where the nonmoving party has not had an opportunity to discover information essential to its opposition. *Shaw v. Foreman*, 59 F.4th 121, 128–29 (4th Cir. 2023).

## IV.

Appellees make much of Farabee's argument on appeal that he needed expert discovery to determine whether Appellees' conduct comported with professional standards. Appellees Br. 33. They contend that, even if true, that fact does not render the court's summary judgment decision premature because Farabee did not need discovery from

12

Appellees to address *Youngberg v. Romeo*, 457 U.S. 307 (1982)[3], an objective standard. In making this argument, Appellees seem to interpret Farabee's reference to discovery below as specifically seeking discovery from them, as opposed to a period to conduct discovery generally. But nothing in the record supports such a limited view. Although Farabee sought specific discovery from Appellees, J.A. 336, he also noted that he had not received any discovery and that a decision without discovery would be improper. Given the absence of any limiting language in Farabee's discovery references and his pro se status, we construe Farabee's filings as seeking a period to conduct all discovery.

Appellees also contend that expert discovery was not necessary because an expert's testimony could not have raised a genuine issue of material fact on the merits or as to Appellees' qualified immunity. Appellees' Br. 35. Regarding the merits, Appellees maintain that "this Court has already held that Farabee does not have a constitutional right to receive DBT as a matter of law, after considering the expert testimony that Farabee cites." Appellees' Br. 34. In making that argument, Appellees misinterpret the issue in *Clarke* which, similar to that presented here, was whether the State properly treated

---

[3] In *Youngberg*, the Supreme Court articulated that involuntarily committed people have a constitutionally protected liberty interest in safety and freedom from restraint in addition to their basic rights to adequate food, shelter, clothing, and medical care. 457 U.S. at 318. The Supreme Court further stated that such right was not absolute, and that the Constitution requires only that professional judgment was exercised in the decision-making process that led to the use of restraints or the unsafe condition. *Id*. at 320. Under this standard, it is not appropriate for a reviewing court "to specify which of several professionally acceptable choices should have been made" when assessing a challenge to an imposed condition. *Id*. at 321. Instead, in determining whether the state's decision to impose the challenged condition passes constitutional muster, the reviewing court must show deference to the judgment exercised by a qualified professional and apply a presumption of correctness to decisions made by that professional. *Id.* at 324.

13

Farabee. And, contrary to Appellees' suggestion, this Court recognized a claim for Farabee on this ground finding that:

> Under the circumstances here, Virginia, by committing Farabee, undertook the responsibility to provide him with adequate medical care but failed to do so, instead opting to incarcerate and reincarcerate him for the past two decades. Farabee has sufficiently alleged that state officials long denied him the one treatment—dialectical behavior therapy ("DBT")—recommended by professional medical personnel.

*Clarke*, 967 F.3d at 394.

As to qualified immunity, Appellees contend that expert witness testimony would not have altered the court's ruling "because an expert could not have shown that it was clearly established that not providing DBT for one month violated Farabee's constitutional rights." Appellee' Br. 35. As Farabee notes, however, Appellees frame the qualified immunity question too narrowly. By framing the question around DBT specifically, Appellees attempt to cabin the Court's analysis to whether DBT is a constitutionally mandated treatment generally. Similarly, Appellees' reference to the short time period at issue in this case suggests that a due process violation for a limited time is acceptable.

Both of those premises are flawed and posit that the appropriate qualified immunity question in this case is whether it was clearly established that not providing a patient with medical treatment necessary to treat his condition violated his constitutional rights. The Constitution does not provide a right to specific medication or preferred treatment. However, it does provide a right to those in government care to medical treatment necessary to treat their respective conditions. Farabee suffers from borderline personality disorder. The record indicates that several doctors, including some employed by the state,

14

have confirmed his diagnosis and acknowledged his need for DBT. Yet, for some reason, Farabee has not yet been accorded that treatment despite his commitment to state custody for several years at a time. It may be the case that discovery will produce documentation indicating that the State's decision not to offer Farabee DBT resulted from an exercise of professional judgment. If so, the decision would be reasonable and therefore shelter Appellees from liability on this issue. Whether Appellees are entitled to qualified immunity therefore depends on whether their decisions are justified under *Youngberg* and summary judgment on this basis is inappropriate absent resolution of that issue.

Appellees also contend that the district court's decisions should be affirmed because Farabee failed to demonstrate that discovery was necessary rather than merely desired. First, Appellees contend that Farabee "did not identify issues on which discovery was essential to his opposition because they were likely to create a genuine dispute of material fact." Appellees' Br. 29–30. Second, Appellees argue that Farabee failed to satisfy Rule 56(d)'s requirements because he never filed a Rule 56(d) motion or the required affidavit, did not serve any discovery requests on them, did not identify discovery that he thought was essential to his opposition, and did not ask for additional time to develop further evidence before responding to the motion. Appellees' Br. 31. In sum, Appellees seek to have this Court affirm the district court's decision because of Farabee's non-compliance with Rule 56(d).

This Court's precedent cautions against such a result, particularly in cases involving pro se plaintiffs such as Farabee. This is especially true in the context of pro se litigation and when the movant exclusively controls evidence relevant to the nonmovant's

15

opposition. In *Pledger v. Lynch*, for example, this Court reversed the district court's grant of summary judgement finding that the notice the court issued before its decision fell short of *Roseboro*'s requirements. 5 F.4th at 525–26. The notice in *Pledger* informed the plaintiff of the summary judgment and dismissal standards and advised him that he must set forth facts showing a genuine triable issue to survive at the summary judgment stage. *Id.* The notice did not, however, inform the plaintiff that he could submit affidavits or other material to counter the motion. *Id.*

This Court found that deficiency critical and concluded that on those facts, the notice failed to adequately inform the plaintiff of his obligations and even "implied that additional materials were unnecessary." *Id.* Specifically, we said that "[i]n instructing Pledger to file an opposition explaining why his case should not be dismissed, the notice suggested that an explanation by itself would be sufficient, when in fact Pledger would have to do more – submit an affidavit and other evidence – to defeat a summary judgment motion." *Id.* We concluded that because of the inadequacy of the *Roseboro* notice, we could not know what additional information the plaintiff "could have added to bolster his allegations by way of affidavit had he been advised of his right to file one, nor what other material might have been available to him by way of discovery." *Id.* at 525–26.

In addition, in *Shaw*, a pro se imprisoned plaintiff asserted a First Amendment retaliation claim alleging that he was denied a fair hearing and transferred to a maximum-security prison in retaliation for filing internal complaints and letters regarding his relegation to disciplinary segregation. 59 F.4th at 125. The district court granted the prison defendant's pre-discovery motion for summary judgment finding that the plaintiff provided

16

insufficient evidence of a causal connection between his protected activity and any adverse action by defendants. *Id.* at 126. The plaintiff appealed, arguing in relevant part that the district court erred by granting summary judgment without affording him any opportunity to conduct discovery. *Id.* We agreed with that argument and concluded that the district court abused its discretion in doing so. *Id.* at 129.

We reasoned that although the plaintiff failed to adhere to the *Roseboro* notice or file a Rule 56(f) affidavit, "the district court was on fair notice of potential disputes as to the sufficiency of the summary judgment record" because the plaintiff expressed a desire to investigate the Prison Officials' evidence, thereby implicitly seeking discovery. *See*, e.g., *Shaw*, 59 F.4th at 129 (citing *Pledger*, 5 F.4th at 526). Moreover, because most of the evidence the plaintiff needed to combat the motion for summary judgment bore on the defendant's subjective knowledge or was in their exclusive control, we concluded that "premature summary judgment [wa]s particularly disfavored." *Id*. at 128.

Most recently, in *Jenkins v. Woodard*, a pro se incarcerated plaintiff appealed the district court's denial of his requests for counsel and an extension of time, and its grant of summary judgment to the defendants. 109 F.4th 242 (4th Cir. 2024). In that case, the district court issued a scheduling order which included a discovery period, but the plaintiff failed to conduct discovery during the allocated time. *Id.* at 250. The plaintiff attributed that failure to his low IQ, lack of general education and legal knowledge, history of severe mental illness, and inability to access legal materials and evidence while incarcerated. *Id.* at 251. This Court reversed, holding that "because the district court's failure to appoint Jenkins counsel was an abuse of discretion and Jenkins's lack of counsel denied him a

17

meaningful opportunity to conduct discovery, the district court's refusal to grant an extension of time was also an abuse of discretion." *Id.*

To date, *Jenkins* is the only case in which this Court tethered the district court's denial of the a pro se plaintiff's Rule 56(d) request to the court's refusal to appoint counsel. *Id.* at 250. That said, *Jenkins* is distinguishable because, unlike the plaintiff in that case, Farabee was never provided with any opportunity for discovery. The *Jenkins* court issued a scheduling order, but Jenkins was unable to conduct any discovery because he was incarcerated and lacked the legal and general knowledge necessary to engage in the discovery process. Here, the district court converted a motion to dismiss into a motion for summary judgment without ever providing an opportunity for Farabee to conduct discovery (although he probably would have been unable to for the same reasons as the *Jenkins* plaintiff).

This case is therefore more similar to cases in which this Court has reversed because the district court was aware of a potential need for discovery. *Pledger*, 5 F.4th at 526 (remanding for discovery after concluding that the pro se plaintiff's requests for appointment of counsel to assist with "investigation" and opposition to summary judgment on the grounds that "discovery had not been allowed" put the district court on "fair notice of a potential dispute as to the sufficiency of the summary judgment record"). Notably, contrary to Appellees' contention, Farabee's failure to file a formal Rule 56(d) affidavit or declaration does not warrant a different conclusion. Indeed, "[e]ven in counseled cases, we have excused technical noncompliance with Rule 56(d) where the nonmoving party is not at fault" and "has adequately informed the district court that the motion is premature and that more discovery is necessary." *Pledger*, 5 F.4th at 526 (citing *Harrods Ltd v. Sixty*

18

*Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002)) (holding that the district court erred in granting summary judgment without discovery where the "nonmoving party's objections before the district court served as the functional equivalent of an affidavit" under Rule 56(d) and "the nonmoving party was not lax in pursuing discovery").

The district court erred in granting Appellees' summary judgment on Farabee's claim without first providing him with an opportunity to conduct discovery. *See Shaw*, 59 F.4th 121 at 129–30 (holding that the district court abused its discretion by granting a pre-discovery motion for summary judgment despite its issuance of a proper *Roseboro* notice where the "court was on fair notice of potential disputes as to the sufficiency of the summary judgment record" and much of the relevant evidence was in the defendants' subjective knowledge or exclusive control).

That error is only compounded by the insufficiency of the *Roseboro* notice discussed above. *Pledger*, 5 F.4th at 527 ("Given the shortcomings in Pledger's *Roseboro* notice and the failure to provide him with an opportunity for discovery, the district court abused its discretion in granting summary judgment in this posture."). We therefore reverse the district court's denial of Farabee's request for discovery.[4]

\* \* \*

This Court has recognized in the context of leave to amend for pro se plaintiffs, "[t]he utmost freedom to amend, however, is of little value to an unadvised, unsophisticated

---

[4] Having determined that the district court erred in granting summary judgment without discovery, we decline to address the remainder of Farabee's arguments regarding other potential errors.

inmate lacking the knowledge to identify lacunae in his pleadings." *Carter v. Hutto*, 781 F.2d 1028, 1033 (4th Cir. 1986). The same holds true with respect to confined pro se plaintiffs in Farabee's position. Farabee has indicated that he lacks legal education, cannot access legal materials, suffers from severe mental illness, and is institutionalized. This Court has held these factors relevant to evaluating a pro se plaintiff's subjective abilities in the past. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (rev'd on other grounds); *Jenkins*, 109 F.4th at 249. Farabee's limited abilities will likely make it exceptionally difficult for him to conduct discovery in this case given that the core issue requires a *Youngberg* determination. *See Eagan v. Dempsey*, 987 F.3d 667, 683 (7th Cir. 2021) (emphasizing, in context of appointment of counsel, the complexity of cases requiring plaintiffs to prove a substantial departure from accepted professional judgment).

Indeed, the record reflects the reality that Farabee will be unable to locate an expert witness which is essential to his claim. Appellees' Br. 33 (referencing Farabee's statements that as "an individual in an institution" Farabee "cannot retain or acquire his own expert witness without court-appointed counsel"); *see also* J.A. 559. Appellees have already attempted to use this fact against Farabee and will likely do so again in the future if he is unable to present an expert witness following the discovery period. *See* Appellees' Br. 34 (noting that Farabee did not inform the district court of any efforts he made during the four-year period between the time he filed his complaint and their supplemental summary judgment motion despite the fact that Farabee was institutionalized, and the case was on appeal in this court during that time).

20

Thus, although Farabee did not appeal the court's denials of his requests for counsel, we recommend that the district court appoint counsel on remand for Farabee to assist in litigating the case. *See Shaw*, 59 F.4th at 132 (reversed and remanded the district court's pre-discovery grant of summary judgment and "recommend[ing] that the district court appoint counsel" on remand); *Riddick v. Barber*, 109 F.4th 639, 652 (4th Cir. 2024) (declining to review the district court's denials of plaintiff's requests for appointment of counsel and recommending that the court appoint counsel on remand to assist him at future stages of litigation with identifying the relevant professional standards under *Youngberg*, conducting discovery, and obtaining expert testimony); *Brooks v. Johnson*, 924 F.3d 104, 122 n.9 (4th Cir. 2019) (finding the appointment of counsel question moot after vacating the court's grant of summary judgment and suggesting on remand "that the court consider appointing counsel for [the plaintiff] to assist in litigating the case").

V.

The district court did not grant Farabee discovery despite his repeated requests for the same, and notice that discovery was necessary on Farabee's claims. Accordingly, we reverse the district court's denial of Farabee's requests for additional discovery; and vacate its summary judgment decision on the merits and its grant of qualified immunity.

Given the complexity of the case and Farabee's apparent inability to effectively prosecute his claims, we recommend that the district court appoint counsel to assist Farabee as the case proceeds.

*REVERSED AND VACATED*

21

PAMELA HARRIS, Circuit Judge, concurring:

I join the court's opinion, and write separately to emphasize what are, in my view, the most salient considerations.

Our general rule is that summary judgment is appropriate "only after adequate time for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1992) (internal quotation marks and citation omitted). And we have explained that "premature summary judgment" is especially disfavored in cases like this one, in which the plaintiff is litigating pro se and key facts "bearing on the subjective knowledge of [the] defendants are exclusively in control of the opposing party." *Shaw v. Foreman*, 59 F.4th 121, 128–29 (4th Cir. 2023) (internal quotation marks and citation omitted). Indeed, we have cautioned that a court ordinarily should not grant summary judgment against a pro se plaintiff if it is "on fair notice of a potential dispute as to the sufficiency of the summary judgment record." *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021).

There is no reason not to apply that general rule here. Farabee expressly asked for the opportunity to conduct discovery, explaining his need to "question or depose witnesses [and] to obtain his own expert witnesses," J.A. 62, and to "gather or authenticate evidence" to test the credibility of the defendants and corroborate his own allegations, J.A. 336. And he objected, in so many words, that granting summary judgment without first allowing for discovery would be "premature." J.A. 62. That was enough to put the district court on "fair notice" that Farabee could not proceed without access to evidence in the defendants' possession. *Pledger*, 5 F.4th at 526.

22

It is true, as the defendants argue, that Farabee did not formally oppose summary judgment through the ordinary Rule 56(d) procedures. *See Shaw*, 59 F.4th at 128. But even when a party is represented by counsel, we will "excuse[] technical noncompliance with Rule 56(d)" if the nonmoving party is not at fault and has otherwise put the district court on notice as to the need for discovery. *Pledger*, 5 F.4th at 526; *see also Shaw*, 59 F.4th at 129. Notice is taken care of, as described above. As for fault, we should not penalize Farabee for the shortcomings in the court's *Roseboro* notice – which never mentioned Farabee's rights under Rule 56(d) or the procedures he could follow to seek discovery. As we explained in *Pledger*, we do not fault a pro se litigant for failing to formally seek discovery under Rule 56(d) when the district court has not informed him of his right to do so. *Pledger*, 5 F.4th at 526.

The defendants also argue that there was no need for discovery here because this court already has concluded, in *Farabee v. Yaratha*, 801 F. App'x 97 (4th Cir. 2020), that Farabee has no constitutional right to treatment in the form of DBT. But Farabee's claims extend beyond the alleged denial of DBT. And even as to DBT, the defendants are incorrect. In *Yaratha*, we held that Farabee's treatment was within the realm of acceptable professional judgment under *Youngberg* because his doctors testified to their view that DBT's risks to Farabee would outweigh its benefits. *See Yaratha*, 801 F. App'x at 101, 104–05; *Youngberg v. Romeo*, 457 U.S. 307 (1982). There is no such testimony on this record. Whether Farabee's current treatment remains consistent with *Youngberg*'s professional judgment standard would require access to things like Farabee's complete

23

medical records and treatment plans – evidence that remains, absent discovery, in the exclusive control of the defendants.

This case is unlike *Yaratha* in another crucial respect. Farabee alleges that he was not offered DBT because, as multiple defendants told him, the treatment was being withheld in retaliation for his prior lawsuits. And the defendants' response is not that DBT was properly withheld in an exercise of professional judgment, but that it was instead *offered* to Farabee, who refused it. So this case is about more than a dispute over *Youngberg*'s professional judgment standard, as in *Yaratha*, and also features core factual disputes over what treatment was offered to or withheld from Farabee and why – factual questions that cannot be resolved on the current record. *See Alexander v. Connor*, 105 F.4th 174, 183 (4th Cir. 2024) (cautioning that district court may not discredit non-movant's affidavit on summary judgment, even when the affidavit is "uncorroborated, self-serving, or filed by [a] pro se prisoner[]").

Under these circumstances, the district court's pre-discovery grant of summary judgment was in error. I also agree with the majority that the district court should consider the appointment of counsel, and I join the majority opinion in full.

24